MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2016 ME 143
Docket:        Aro-15-406
Submitted
 On Briefs:   May 26, 2016
Decided:       September 15, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


RICHARD CAYER et al.

v.

TOWN OF MADAWASKA


ALEXANDER, J.

[¶1]  Richard and Ann Cayer appeal from a judgment of the Superior Court (Aroostook County, *Hunter, J.*) dismissing, as untimely, their appeal from decisions of the Madawaska Board of Select People declining the Cayers' requests to schedule an advisory referendum, pursuant to former 30-A M.R.S. § 2171-D (2012), on the Cayers' petition, pursuant to 30-A M.R.S. § 2171-B (2015), seeking to have their properties within the Town of Madawaska secede from the Town.[1]  Because the court did not err in determining that the appeal was untimely, we affirm.

---

[1]  The issues in this case involve application of the municipal secession statute, 30-A M.R.S. §§ 2171 to 2171-G (2012 & 2015), portions of which were amended during the course of the proceedings before the Town.  *See* P.L. 2013, ch. 384 (emergency, effective July 1, 2013) (codified at 30-A M.R.S. §§ 2171-C-1, 2171-D (2015)).  The legislation added section 2171-C-1 and amended section 2171-D.  All other sections of the statute remained unchanged.

## I. CASE HISTORY

[¶2]   In this appeal from an order on a petition for review of governmental action pursuant to M.R. Civ. P. 80B, we draw the facts from the statements of material facts, M.R. Civ. P. 56(h), including what purports to be the record of the municipal decision, that appear in the summary judgment record. Summary judgment is appropriate when review of the parties' statements of material facts and the record evidence to which the statements refer, considered in the light most favorable to the nonmoving party, here the Cayers, demonstrates that there is no genuine issue of material fact that is in dispute and the moving party is entitled to judgment as a matter of law. *Remmes v. Mark Travel Corp.* 2015 ME 63, ¶ 18, 116 A.3d 466.

[¶3]   On May 28, 2013, the Cayers filed a petition to secede from the Town of Madawaska pursuant to 30-A M.R.S. 2171-B.  Since its enactment in 1999, P.L. 1999, ch. 381, § 2, section 2171-B has specified:

> The secession process may be initiated by submitting to the municipal officers a petition signed by more than 50% of the registered voters within the secession territory that requests a municipal public hearing for the purpose of discussing whether the specified territory should secede from the municipality. The petition must set forth the physical boundaries of the secession territory, the resident population, the nonresident population and a list of not more than 5 people who will serve as representatives of the secession territory. For purposes of this subchapter,

"secession territory" means the area described in the petition for secession.

> The registrar of voters of the municipality shall verify the signatures on the petition within 30 days of the receipt of the petition.

[¶4] The "secession territory" identified in the petition consists of six parcels of land owned by the Cayers; the only residents of the territory were the Cayers. The Town Manager determined that the Cayers' petition to secede complied with section 2171-B. However, no public hearing was scheduled pursuant to former 30-A M.R.S. § 2171-C (2012), which, without setting a time within which a hearing shall be scheduled, stated that "[u]pon receipt of a petition with the required number of verified signatures, the municipal officers shall call and hold a public hearing. The purpose of the public hearing is to allow municipal residents, officers and residents in the secession territory to discuss secession." *Id.*

[¶5] The statements of material fact indicate that Town officials were uncertain about application of the law and contacted a legislator and the Maine Municipal Association regarding that uncertainty.

[¶6] On July 1, 2013, the Legislature enacted and the Governor approved a bill, L.D. 1561 (126th Legis. 2013), becoming P.L. 2013, ch. 384 (emergency legislation, effective July 1, 2013). The new law changed the

4

Legislature's practice for receiving and considering secession petitions. The new practice requires that, before any municipality conducts any advisory referendum on a petition to secede, a representative from the secession territory must first "obtain the authorization of the Legislature to proceed with the secession process." 30-A M.R.S. § 2171-C-1 (2015).

[¶7]  The version of the statute in effect when the Cayers filed their petition to secede had provided that before consideration of a petition to secede by the Legislature "the municipality shall conduct an advisory referendum within the secession territory" at least thirty days but not more than 120 days after an initial public hearing on the petition to secede. 30-A M.R.S. § 2171-D (2012).  Thus, the effect of the Legislature's action was that legislative authorization must now precede any municipal advisory referendum on a secession petition.

[¶8]  The Town determined that the amended statute governing legislative consideration applied to the Cayers' petition and scheduled a hearing on the petition for July 30, 2013.  At the hearing, Richard Cayer spoke and described the problems that prompted him and his wife to petition to secede. *See* 30-A M.R.S. § 2171-C(2) (2015).  As required by law, the Town refrained from taking any action on the petition at the public hearing.

*See* 30-A M.R.S. § 2171-C ("The purpose of the public hearing is to allow municipal residents, officers and residents in the secession territory to discuss secession[;] . . . no . . . official vote may be taken at the public hearing.").

[¶9]   Richard Cayer attended a regularly scheduled meeting of the Board on August 6, 2013, and again described the reasons why he and his wife sought to secede.  At that meeting, the Board voted unanimously that it did not support the Cayers' petition, and advised Richard Cayer that, pursuant to the newly enacted section 2171-C-1, he would need to obtain approval from the Legislature before the Town could hold an advisory referendum on the petition pursuant to section 2171-D.

[¶10]   On November 5, 2013, the Cayers again appeared before the Board and argued that the procedures stated in the repealed version of the secession statute, requiring that the Town hold an advisory referendum within 120 days after the July 30, 2013, hearing, should apply.  The Board voted unanimously that it would not proceed to schedule an advisory referendum on the petition to secede, and that it was a "closed matter" as of that November meeting date.  The Town took no further formal action on the Cayers' petition after the November 5, 2013, vote.

6

[¶11]  On February 5, 2014, the Cayers filed a complaint against the Town, pursuant to M.R. Civ. P. 80B, seeking review of the Town's denial of the Cayers' request to schedule an advisory referendum.  The complaint also sought, in Count II, a declaratory judgment that the repealed statute applied to the Cayers' petition pursuant to M.R. Civ. P. 57 and 14 M.R.S. § 5953 (2015); in Count III, damages and attorney fees, pursuant to 42 U.S.C. §§ 1983 and 1988 (2016), for alleged violations of the Cayers' First Amendment and due process rights; and, in Count IV, a writ of mandamus compelling the Town to take all actions mandated by the repealed version of the secession statute.

[¶12]  After some preliminary proceedings to develop a process to address the independent claims pursuant to M.R. Civ. P. 80B(i), the Town moved for summary judgment, M.R. Civ. P. 56, on all counts of the Cayers' complaint.  As part of the statement of material facts, M.R. Civ. P. 56(h), submitted with its motion, the Town filed an affidavit of the Town Manager providing what purported to be the administrative record of the proceedings. The Cayers objected to the Town Manager's affidavit and, pursuant to M.R. Civ. P. 80B(e)(1), filed their own version of the record of the proceedings before the Town as part of their opposition to the motion for summary judgment.  Resolution of disputes about the administrative record is not

important for this appeal because there is no dispute about any material fact relevant to a decision on the motion for summary judgment.

[¶13]  On July 23, 2015, the trial court, in an opinion that thoroughly examined the facts and the legal issues, entered a summary judgment in favor of the Town and, finding the appeal untimely, dismissed the Cayers' Rule 80B appeal and the independent claims, which the court found either unsupported in the law or subject to the thirty days after notice of action filing time limits set in Rule 80B(b).  In its opinion, the court determined that the repealed mandate of former 30-A M.R.S. § 2171-D (2012) to hold an advisory referendum within 120 days of the public hearing applied to the Cayers' petition, but found the Cayers' challenge to the Town's explicit refusal to take any action untimely.[2]  The Cayers timely appealed the trial court's judgment.

## II.  LEGAL ANALYSIS

A.    Application of the Thirty-day Filing Limit in Rule 80B

[¶14]  The Cayers acknowledge, as they must, that their action was not filed "within 30 days after notice of any action or refusal to act of which

---

[2] We will assume for purposes of this opinion that the trial court, citing 1 M.R.S. § 302 (2015), properly determined that the repealed provisions of law continued to apply to the Cayers' petition. However, we note that the primary impact of the new legislation was for the Legislature to add a new prerequisite for ultimate legislative approval of a secession petition.  Because efforts to obtain legislative approval of the Cayers' petition had not yet been initiated, and were not pending before the Legislature when the new law was enacted, section 302 may not have barred the application of the new legislative preapproval requirement to the Cayers' petition.

review is sought" as required by Rule 80B(b). But they argue that the Town's actions here constituted a "failure to act" rather than a "refusal to act," entitling them to file their action any time "within six months after expiration of the time in which action should reasonably have occurred." M.R. Civ. P. 80B(b).

[¶15] The Town expressly refused to act on the Cayers' petition twice: first, at the August 6, 2013, meeting, when the Board voted unanimously that it did not support the Cayers' petition and stated that the Town would not take further action on the petition absent Legislative approval; and second, at the November 5, 2013, meeting when the Board voted unanimously that it would not schedule an advisory referendum on the petition to secede under the repealed version of the statute, and determined that the secession request was a "closed matter." The thirty-day appeal period from the Town's "refusal to act" expired no later than December 5, 2013, two months before the action was filed.

B. Exclusivity and the Federal Civil Rights Claim

[¶16] "[W]hen direct review is available pursuant to Rule 80B, it provides the exclusive process for judicial review unless it is inadequate." *Gorham v. Androscoggin Cty.*, 2011 ME 63, ¶ 22, 21 A.3d 115. "Resort to the

courts by alternate routes will not be tolerated, subject only to an exception for those circumstances in which the course of 'direct appeal' review by a court is inadequate and court action restricting a party to [Rule 80B review] will cause that party irreparable injury." *Colby v. York Cty. Comm'rs*, 442 A.2d 544, 547 (Me. 1982). Review pursuant to Rule 80B is inadequate when an alleged deprivation of civil rights occurs before, and not as a part of, the action or inaction for which a plaintiff seeks review. *See Gorham*, 2011 ME 63, ¶ 25, 21 A.3d 115.

[¶17] Here, the Cayers sought a declaratory judgment that the repealed secession statute applied to their petition, and that the Town's failure to apply that statute violated their due process rights. The Town's determination that the amended statute governed the petition was a part of the process by which the Town decided not to hold a referendum on the Cayers' petition for secession. From that decision-making process, the Cayers had available Rule 80B review to correct any process errors. Consequently, Rule 80B review provided all the process the Cayers were due, had they timely exercised their right of appeal.

[¶18] The Cayers also argue that genuine issues of material fact exist as to their section 1983 claim, alleging deprivations of due process and First

Amendment rights. The due process issue is addressed above. The First Amendment claim apparently arises from some alleged impropriety in Town officials' speaking with a legislator and the Maine Municipal Association about perceived uncertainties in application of the repealed statutes.

[¶19] Nothing precludes municipal officials from exercising their First Amendment rights to speak with legislators or the Maine Municipal Association about concerns in application of statutes the municipal officials must administer. In fact, we have on occasion urged municipal officials to engage in such conversations to improve operation of State laws and municipal ordinances. *See Bryant v. Town of Camden*, 2016 ME 27, ¶ 22, 132 A.3d 1183 ("We again encourage Maine's cities and towns, perhaps with the assistance of the Maine Municipal Association, to review the myriad provisions in local ordinances addressing finality and appealability. The creation of standardized, understandable, and comprehensive rules for the provision of appellate review could substantially diminish the problems of cost and delay created by the language of the municipalities' disparate ordinances."); *Witham Family Ltd. P'ship v. Town of Bar Harbor*, 2015 ME 12, ¶ 5 n.2, 110 A.3d 642 ("Parties affected by municipal decision-making would benefit from efforts by the Legislature, or individual municipalities, to specify

how and when to appeal from municipal decisions" consistent with the requirement that a decision brought to a court for review must be final.).

[¶20] Municipal officials speaking with legislators or others about clarifications or improvements in laws they are administering do not violate 42 U.S.C. § 1983 or any other civil rights law.

[¶21] While municipal officials and municipalities may be subject to civil actions for local ordinances that violate individuals' civil rights, municipal officials speaking to legislators about clarifications or improvements in state law do not render the municipality civilly liable for laws the Legislature may ultimately enact. Only the State and the Legislature are responsible for laws the Legislature enacts.

[¶22] The late Justice Antonin Scalia, concurring in an opinion that had quoted, as legislative history, a House Committee Report that had "indicate[d] concern with abusive practices undertaken by attorneys," responded:

> Perhaps, but only the concern of the author of the Report. Such statements tell us nothing about what the statute means, since (1) we do not know that the members of the Committee read the Report, (2) it is almost certain that they did not vote on the Report (that is not the practice), and (3) even if they did read and vote on it, they were not, after all, those who made this law.

*Milavetz, Gallop & Milavetz, P.A. v. United States,* 559 U.S. 229, 253 (2010) (Scalia, J., concurring). The Town officials here, and the individual legislator

12

the Town officials may have spoken with, are not the ones "who made this law," and the Cayers cannot hold the Town legally liable for the Legislature's making the law.

[¶23]  The Town's actions provide no basis for a civil rights claim or a declaratory judgment action.

C.      The Mandamus Claim

[¶24]  The Cayers seek to avoid the filing limits imposed by Rule 80B(b) by bringing a separate claim for a writ of mandamus.  When originally adopted in 1959, and subject to a few statutory exceptions, Rule 80B replaced the old extraordinary writs such as certiorari and mandamus and became the exclusive means for review of State and local government administrative actions.[3]  *See* M.R. Civ. P. 80B, Advisory Committee's Note to 1967 amend.; *First Mfrs. Nat'l Bank v. Johnson*, 161 Me. 369, 375, 212 A.2d 840, 843 (1965).

[¶25]  An action for a writ of mandamus provides no alternative cause of action.  Rule 80B is the exclusive means to challenge a municipal administrative decision in a civil action.

---

[3]  When originally adopted in 1959, Rule 80B applied to judicial review of both State and local administrative decision-making.  That remained the case until the 1983 adoption of M.R. Civ. P. 80C governing judicial review of State administrative decision-making.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Luke M. Rossignol, Esq., Bemis & Rossignol, LLC, Presque Isle, for appellants Richard and Ann Cayer

John J. Wall, III, Esq., and Matthew K. Libby, Esq., Monaghan Leahy, LLP, Portland, for appellee Town of Madawaska

Aroostook County Superior Court docket number AP-2014-2
FOR CLERK REFERENCE ONLY