STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                         Civil Action
                                                  DOCKET NO. AP-18-0003

DUBOIS LIVESTOCK, INC.,                  )
                                         )
          Plaintiff,                     )
                                         )        **ORDER**
     v.                                  )
                                         )
TOWN OF ARUNDEL, et al.,                 )
                                         )
          Defendants.                    )

## I.    BACKGROUND

On January 29, 2018, plaintiff Dubois Livestock, Inc. ("Dubois Livestock") filed the instant Complaint for Rule 80B review against defendants Town of Arundel, Arundel Zoning Board of Appeals ("ZBA"), and Arundel Code Enforcement Officer James Nagle.

The allegations in the Complaint are as follows. Dubois Livestock operates an agricultural compositing facility located at 2 Irving Road in Arundel, Maine (the "Facility"). (Am. Compl. ¶ 1.) On June 27, 2016, this court entered a consent decree memorializing a mediated settlement agreement between the parties (the "Consent Decree"). (Am. Compl. ¶ 16.)

Pursuant to the Consent Decree, Dubois Livestock was granted a conditional use permit for the operation of the composting Facility (the "Permit") and in exchange dismissed a number of claims that it had filed against the defendants. Dubois Livestock further agreed not to expand the Facility without first obtaining permission, agreed that it would not increase the Facility's volume for five years, and agreed that after such five-year period, it would appear before the Arundel Planning Board ("APB") before increasing it's the Facility's volume. (Am. Compl. ¶ 20;

1

Defs.' Ex. B § 1(a).) Further, Dubois Livestock agreed to apply to the APB on or before July 1, 2017 to renew the Permit. (Am. Compl. ¶ 17; Defs.' Ex. B § 1(a).)

The Consent Decree outlines the renewal process as follows: "The performance criteria specified in the [Land Use Ordinance] for the issuance and reissuance of all solid waste processing facility renewal permits at the Site, hereinafter shall be deemed to have been satisfied by the submissions described below or deemed inapplicable as a result of Dubois' grandfathered status." (Am. Compl. ¶ 17; Defs.' Ex. B § 1(b).) The referenced submissions include (1) an accurate plan of the facility that reflects the grandfathered and existing 5.9-acre composting area as well as the location of the existing paved composting pads; and (2) a letter from the CEO confirming that the operation complies with all existing and applicable State licenses and regulations. (Am. Compl. ¶ 18; Defs.' Ex. B §§ 1(b)(i-ii).) Dubois Livestock timely submitted its application to the APB (the "Application"). Although the Complaint alleges that Dubois Livestock submitted a plan pursuant to Section 1(b)(i) of the Consent Decree with their Application, it does not allege that a letter from the CEO was submitted. (Am. Compl. ¶ 18.)

The APB denied the Application at a meeting on July 27, 2017. (Am. Compl. ¶ 32.) Dubois Livestock contends that this meeting was held without proper notice and, consequently, no representative of Dubois Livestock attended the meeting. (Am. Compl. ¶ 32.) Dubois Livestock further argues that this decision improperly interpreted the Consent Decree, was made without jurisdiction, and was "part of a conspiracy to declare Dubois Livestock's composting operation a violation of a municipal ordinance in clear and direct violation of the Maine Agricultural Protection Act as enhanced by the 2015 amendments." (Am. Compl. ¶ 32.)

Town Planner Tad Redway, not the APB, sent Dubois Livestock a notice of its decision on July 28, 2017. (Am. Compl. ¶ 33; Defs.' Ex. D.) This notice stated:

> At its July 27, 2017 meeting the Arundel Planning Board reviewed your application for a renewal of the Conditional Use Permit for operation of a Solid Waste composting facility located at 2 Irving Road
>
> In its review, the Planning Board unanimously determined that the submitted application was incomplete in that the [letter and map to be submitted pursuant to Sections 1(b)(i-ii) of the Consent Decree] were not provided as part of the application . . . .
>
> Following the determination of incompleteness, the Planning Board unanimously voted to deny your application for a Solid Waste Conditional Use Permit renewal based on your failure to comply with criteria 1.a and 1.b of the Consent Decree . . .

(Defs.' Ex. D.)

Although the APB's denial of the Application was appealed to the Town's ZBA, the appeal was denied because, denials of conditional use permits are not appealable to the ZBA pursuant to the Town's ordinances. (Am. Compl. ¶ 33.)

After the Application was denied, the Town issued a Notice of Violation (the "NOV") notifying Dubois Livestock that it was in violation of the Consent Decree and the Town's Land Use Ordinance (the "LUO"). (Am. Compl. ¶ 34.) Dubois Livestock appealed the NOV to the ZBA. (Am. Compl. ¶ 36.) The ZBA denied plaintiff's appeal on November 29, 2017. (Am. Compl. ¶ 37.) After this decision, Dubois Livestock moved for the ZBA to reconsider its decision. (Am. Compl. ¶ 37.) The ZBA declined to do so. (Am. Compl. ¶ 38.)

Throughout its Amended Complaint, plaintiff asserts that the Town was engaged in a conspiracy to shut down its agricultural composting operation in violation of the Consent Decree, the Maine Agriculture Protection Act, 7 M.R.S. §§ 151-163 ("MAPA"), and the Constitutions of the United States and the State of Maine. (Am. Compl. ¶¶ 2-3, 19, 21, 25-27, 29-32, 35, 37, 57-58, 63-64, 69.) Specifically, plaintiff contends that "the Town's CEO had coordinated with [Department of Environmental Protection] regulators to develop misleading and false evidence of alleged (but false) violations of [Department of Environmental Protection] regulations relating

3

primarily to occasional odor." (Am. Compl. ¶ 29.) Further, plaintiff alleges that although it complies with all applicable state laws, "the Town worked with state officials to issue a Notice of Violation to Dubois based primarily or exclusively on those older (and false) allegations of inconsistencies of state law." (Am. Compl. ¶ 30.)

On January 16, 2018, anticipating that the Town would argue that any Complaint for Rule 80B review as untimely, plaintiff moved this court to extend the deadline for filing an 80B complaint until January 30. Additionally, plaintiff contends that because the APB and ZBA's decisions were out of their respective jurisdictions, there is no deadline to file the present appeal. (Am. Compl. ¶ 39.) Concerning the APB's denial of its Application, Dubois Livestock also contends that it did not receive proper notice of either the hearing itself or the decision and thus the period for filing the appeal has not begun. (Am. Compl. ¶ 40.)

On January 30, 2018, plaintiff filed the instant Complaint. The Complaint lists six claims for relief: Damages for Violation and Contempt of Consent Decree and Breach of Contract (Count I); Declaratory and Injunctive Relief for Violation and Contempt of Consent Decree and Breach of Contract (Count II); Declaratory and Injunctive Relief Under the Maine Agriculture Protection Act ("MAPA") (Count III)[1]; Relief Under Rule 80B from Actions of APB (Count IV); Relief Under Rule 80B from Actions of the ZBA (Count V); and Claims for Violations of State and Federal Constitutions Under 42 U.S.C. § 1983 (Count VI). Plaintiff also filed motions (1) to

---

[1] In addition to asserting a violation of the Consent Decree in Counts I through III, plaintiff seeks relief pursuant to the Settlement Agreement reached by the parties at their mediation. (Am. Compl. ¶¶ 46-47.) However, the Settlement Agreement merged into the Consent Decree when the Decree was entered because it was the final manifestation of the parties' agreement. *See Landrum v. Bd. of Regents*, CIVIL ACTION NO. 90-475, 1992 U.S. Dist. LEXIS 13466, at *35 (E.D. Ky. Feb. 26, 1992) ("The consent decree entered by the parties . . . should therefore be construed as embodying their full agreement. . . . This means that no separate causes of action can arise from the settlement agreement that are alleged as breaches of the consent decree."); *Everett v. Rand*, 152 Me. 405, 410, 131 A.2d 205, 208 (1957). Because the Consent Decree became the final, integrated version of the parties' agreement, the Settlement Agreement merged into the Consent Decree and plaintiff cannot sustain a cause of action upon the Settlement Agreement.

4

specify the course of proceedings, for discovery, and for trial on the merits of all claims on February 7, 2018; and (2) to consolidate, to intervene and for the suspension of all deadlines on February 26, 2018, requesting to consolidate this case with the cases brought by Randy Dubois, Sol Fedder, Marcel Dubois, and Rick Dubois in AP-18-02 and AP-18-05 or to allow Dubois Livestock to intervene in those cases.

On May 7, 2018, defendants moved to dismiss the Complaint, arguing that (1) this court lacks jurisdiction to hear the appeal from the APB's July 27, 2017 denial of plaintiff's Application; (2) plaintiff's challenge to the July 27 APB decision is untimely; (3) plaintiff is precluded from collaterally attacking the APB decision through a declaratory judgment action; (4) plaintiff's challenge of the November 29, 2017 ZBA decision is also untimely and plaintiff has not demonstrated good cause to extend the deadline; (5) plaintiff has not stated a viable due process or First Amendment claim under 42 U.S.C. § 1983; and (7) plaintiff fails to state a claim for relief because its offered interpretation of the Consent Decree is untenable.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss, courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* In its analysis, the court is not required to accept the legal conclusions asserted in the Complaint. *See Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me. 1987) (citation omitted). Additionally, when the court's jurisdiction is challenged, it is the

5

plaintiff's burden of establishing that jurisdiction is proper. *Commerce Bank & Tr. Co. v. Dworman*, 2004 ME 142, ¶ 8, 861 A.2d 662 (citation omitted).

## III. DISCUSSION

### a. Consideration of Attached Documents

Although the court's review of a motion to dismiss is generally limited to the pleading at issue, the court may review certain documents without converting the motion into a motion for summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶¶ 10-11, 843 A.2d 43. "This narrow exception allows a court to consider official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint, without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged." *Id.* ¶ 10 (citation omitted). Such documents "merge into the pleadings." *Id.* (citation omitted). Without allowing these documents, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Because the documents to defendants' motion to dismiss are official public documents that are central to plaintiffs' claims, the court may consider them without converting the instant motion to dismiss into one for summary judgment.

### b. Court's Jurisdiction to Hear Plaintiff's Claims

Unless otherwise provided for by statute, a complaint for Rule 80B governmental review must be filed "within 30 days after notice of any action or refusal to act of which review is sought unless the court enlarges the time in accordance with Rule 6(b)." M.R. Civ. P. 80B(b); *Paul v. Town of Liberty*, 2016 ME 173, ¶ 18, 151 A.3d 924 (citation omitted). Further, "if such

6

governmental action is required by statute, ordinance, or rule to be made or evidenced by a written decision, then the time for the filing of an appeal shall commence when the written decision has been adopted." *Id.* Failure to meet the prescribed time for filing is jurisdictional and an untimely complaint is barred. *Davric Maine Corp. v. Bangor Historic Track, Inc.*, 2000 ME 102, ¶ 11, 751 A.2d 1024; *see also Paul*, 2016 ME 173, ¶ 18, 151 A.3d 924.

The court also reiterates that when jurisdiction is challenged, no inferences are made in plaintiffs' favor. *Gorham v. Androscoggin Cty.*, 2011 ME 63, ¶ 9, 21 A.3d 115 (citation omitted). Defendants claim that both plaintiff's appeal of the APB and ZBA decisions are untimely, and thus the court lacks jurisdiction to hear them.

### i. Timeliness of Review of July 27, 2017 APB Decision

The APB made its decision on the Application during its July 27, 2017 meeting. Plaintiff, however, contends that it did not receive proper notice of the hearing or decision made at the meeting. Further, plaintiff argues that their request for review of this decision is timely because it the APB lacked jurisdiction to deny the Application pursuant to both MAPA and the Consent Decree.

### 1. Dubois' Notice of the Hearing

First, plaintiff argues that the Complaint for review is timely because it did not receive sufficient notice of the hearing. Specifically, Dubois Livestock contends that the notice it received only stated that the APB was to determine the completeness of the Application, not making a final decision. Although notice of a hearing is required to satisfy due process, it is the notice of the decision, not notice of the hearing, that begins the time period for appeal. *See* M.R. Civ. P. 80B(b). Thus, insufficient notice of the July 27, 2017 meeting does not extend the deadline for filing a Complaint for Rule 80B review.

7

## 2. Whether the Town Gave Plaintiff Proper Notice of the APB's Decision

Next, plaintiff contends that the time for filing has not started because defendants' notice of the APB's decision was insufficient. Pursuant to the Freedom of Access Act ("FOAA"), "Every agency shall make a written record of every decision involving the . . . denial of an application, license, certificate or any other type of permit. The agency shall set forth in the record the reason or reasons for its decision and make finding of the fact, in writing, sufficient to appraise the applicant and any interested member of the public of the basis for the decision. A written record or a copy thereof shall be kept by the agency and made available to any interested member of the public who may wish to review it." 1 M.R.S.A. § 407(1). Interpreting similar language found in subsection (2) of section 407, the Law Court held that notice occurs for the purposes of starting the time for bringing a Rule 80B action occurs when one "receives a copy of the written decision of the county commissioners or personnel board required by 1 M.R.S. § 407(2)." *Gorham v. Androscoggin Cty.*, 2011 ME 63, ¶ 19, 21 A.3d 115. Thus, the time for filing an appeal from the denial of a permit application begins to run when the plaintiffs received a copy of the written decision adopted by the APB following its original vote.

Although plaintiff seems to acknowledge that it received notice of the APB's decision, it contends that this notice was ineffective because it was sent by a Town official and not by the APB itself. (Am. Compl. ¶ 33.) Although this notice informed plaintiff of the APB's decision taken at the July 27 meeting, the notice was not a written decision adopted by the APB with findings of fact, but only a notice of the decision made at the July 27 meeting and its rationale. (Defs.' Ex. D.) This notice does not satisfy FOAA's requirement that a written record of the decision setting forth the reasons for the decision and making findings of fact to apprise the plaintiffs of the basis of the denial of their Application. Consequently, the time for filing an appeal has not started to run and

8

plaintiff's request for Rule 80B review of the APB's decision is timely. The court has sufficient jurisdiction to review the APB's denial of plaintiffs' Application and defendants' motion to dismiss is thus denied as to Count IV.

### 3. The APB's Jurisdiction to Deny Plaintiff's Application

Plaintiff further contends that the time limit for the filing of their appeal has not run because they are in part challenging the APB's decision as *ultra vires*. "The jurisdiction of a board of appeals 'is a question of law that must be ascertained from an interpretation of municipal statutes and local ordinances." *Hathaway v. City of Portland*, 2004 ME 47, ¶ 14 n.1, 845 A.2d 1168 (quoting *Salisbury v. Town of Bar Harbor*, 2002 ME 13, ¶ 8, 788 A.2d 598, 601).

The Law Court has held, "[M]unicipal or state actions may be collaterally attacked as outside the jurisdiction or authority of an agency, when it is claimed that the ordinance or statute under which the administrative agency purported to act was unconstitutional on its face, thus rendering the administrative action beyond the lawful authority of the challenged agency." *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 12, 868 A.2d 172 (citation omitted). Additionally, "[s]ubject to equitable defenses including laches, a governmental action may be challenged *at any time*, as ultra vires, when the action itself is beyond the jurisdiction or authority of the administrative body to act." *Id.* (citation omitted) (emphasis added).

### A. Whether MAPA Divests the APB of Jurisdiction

First, plaintiff argues that the 2015 amendments to MAPA deprive the APB of jurisdiction to enforce its ordinances. MAPA provides that an agricultural composting operation "may not be considered a violation of a municipal ordinance if the farm operation or agricultural composting operation conforms to best management practices as determined by the commissioner . . . ." 7 M.R.S. § 154. Additionally, MAPA explicitly states that it does not affect "the application of state

9

and federal laws" or "municipal authority to enact ordinances." 7 M.R.S. § 155. Plaintiff nonetheless argues that MAPA divested the APB of the jurisdiction to enforce the Town's Land Use Ordinance against Dubois Livestock. (Am. Compl. ¶ 41.)

The Law Court addressed a similar argument in *Dubois Livestock, Inc. v. Town of Arundel,* 2014 ME 122, 103 A.3d 556. Although the Law Court found that Dubois Livestock's operation was not a "Farm" under MAPA, the definition of which was modified by the 2015 amendments, the Court held:

> [T]he Agriculture Protection Act does not preempt the Town's Ordinance. Although the Act prohibits a municipality from determining that a farm's method of operation violates a local ordinance if the farm has used "best management practices," there is no indication that, in enacting the Agriculture Protection Act, the Legislature intended to preempt any ordinance or occupy the field. In fact, the Agriculture Protection Act explicitly states that it "does not affect municipal authority to enact ordinances." 7 M.R.S. § 155.
>
> The Ordinance also does not frustrate the purpose of the Agriculture Protection Act. The Act aims to protect farms using best practices from nevertheless having their methods of operation considered to be in violation of local regulations, and Dubois did not meet its burden of demonstrating that the Ordinance would frustrate this goal. The conditional use permit allowed representatives from the Town to inspect Dubois's premises to ensure that the compost pad was intact and that the facility was in compliance with the permit (some version of which had been in effect since 2000). Dubois made no showing that it was following best practices when it violated the Ordinance by failing to report its annual intake to the Town or to allow Town representatives to inspect its premises.
>
> In sum, *the Agriculture Protection Act does not preempt the Ordinance because the Legislature has expressly allowed local regulation and thus has not expressed a clear intent to occupy the field, and the Town's Ordinance does not frustrate the purpose of the Act.*

*Id.* ¶¶ 17-19 (emphasis added).

In their Amended Complaint, plaintiff asserts that it has complied with the best management practices established by the Maine Commissioner of Agriculture. (Am. Compl. ¶ 5.) However, although this fact may prevent the Town from enforcing any conflicting Ordinances, it

10

is clear that MAPA itself does not deprive the APB of its jurisdiction because it expressly allows municipal regulation. Because MAPA does not preempt municipal regulation, the APB retained its jurisdiction to review Dubois Livestock's Application. Any challenge to the municipal action(s) premised on a conflict with MAPA must be brought pursuant Rule 80B.

### B. Whether the Consent Decree Removed Plaintiff's Application from the APB's Jurisdiction

Plaintiff also argues that the Consent Decree removed the APB's jurisdiction to address plaintiff's Application. This argument is premised on plaintiff's assertion that the Consent Decree required the Town to grant a conditional use permit to Dubois Livestock and thus the APB lacked discretion to deny the Application.

However, the Consent Decree required the APB to evaluate Dubois Livestock's Application. (Defs.' Ex. B § 1(a).) Additionally, as to be discussed *infra* in Section III(d), plaintiff's reading of the consent Decree is unreasonable and does not divest the APB of discretion to grant or deny the permit.

Because neither MAPA nor the Consent Decree divested the APB of its jurisdiction, any challenge to the APB and ZBA's actions based on conflict with MAPA still must comply with the procedural requirements of Rule 80B, including the 30-day period for bringing an appeal to this court. Again, because the notice did not comply with FOAA's requirement that the APB adopt a written decision, however, it is not clear at this stage that plaintiff's request for review is untimely.

### ii. Timeliness of Review of ZBA's Decision

As stated above, plaintiff filed a motion to extend the deadline to file a Rule 80B challenge of the ZBA's November 29, 2017 decision (Count V) on January 16, 2018. Rule 80B(d) states that court may enlarge the time to file for Rule 80B review in accordance with Rule 6(b). M.R. Civ. P. 80B(d). Rule 6(b) provides that, "[T]he court for cause shown may at any time in its discretion . .

11

. with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order[.]" M.R. Civ. P. 6(b).

In its motion, plaintiff explained that although it had moved for reconsideration on December 6, 2017, it was "concerned that under 30-A M.R.S. Section 2691(3)(G) the deadline to seek judicial review of the action of the Zoning Board of Appeals may be today January 16, 2018, being the first business day on or after the 45th day following the ZBA's action." (Pl.'s Mot. Extend ¶ 6.) Counsel for plaintiff further stated that he required additional time to prepare and file the complaint because he was asked to file a Rule 80B appeal on behalf of Dubois Livestock on the day he filed the motion, January 16, 2018. (Pl.'s Mot. Extend ¶¶ 7-8.)

Under 30-A M.R.S.A. § 2691(3)(F), a board of appeals "may reconsider any decision reached under this section within 45 days of its prior decision. A request to the board to reconsider a decision must be filed within 10 days of the decision that is to be reconsidered. A vote to reconsider and the action taken on that reconsideration must occur and be completed within 45 days of the date of the vote on the original decision." This Statute further provides, "[A]ppeal of a reconsidered decision must be made within 15 days after the decision on reconsideration." *Id.* Thus, because the Board must take an action on a motion to reconsider within 45 days and an appeal must be made within 15 days of any decision, the latest that an appeal may be brought if there is a motion to reconsider is 60 days following the underlying decision.[2]

Attached to their opposition to plaintiff's motion, defendants included a copy of an email from the ZBA chairman to Sol Fedder, an officer of Dubois Livestock, explaining that the ZBA was not going to reconsider its decision. (Defs.' Mot. Ex. .) Although defendants argue that the

---

[2] The Complaint was filed 62 days following the ZBA's decision.

deadline for plaintiff to file its complaint was January 15, 2018, 30-A M.R.S.A. § 2691(3)(F) gives plaintiff an additional 15 days from the ZBA's decision on its motion to reconsider within which to file an appeal. Because the ZBA notified plaintiff of its intent not to reconsider its decision on January 11, 2018, Plaintiff had until January 26 to file its appeal. Plaintiff, however, did not file the instant Complaint until January 30, 2018. Thus, plaintiff must still show cause to extend the deadline.

The court finds that plaintiff has demonstrated cause to extend the deadline to challenge the ZBA's November 29, 2017 decision. The court retroactively enlarges the deadline to file the Rule 80B appeal to January 30, 2018. Thus, Count V is timely and the court has jurisdiction to hear it.

### c. Whether Rule 80B Review is Plaintiff's Exclusive Relief

Next, defendants argue that plaintiff cannot assert their independent claims (Counts I, II, III ,and VI) because Rule 80B review provides plaintiff's exclusive means for redress. Generally, "when direct review is available pursuant to Rule 80B, it provides the exclusive process for judicial review unless it is inadequate." *Gorham v. Androscoggin Cty.*, 2011 ME 63, ¶ 22, 21 A.3d 115. "Resort to the courts by alternate routes will not be tolerated, subject only to an exception for those circumstances in which the course of 'direct appeal' review by a court is inadequate and court action restricting a party to [Rule 80B review] will cause that party irreparable injury." *Colby v. York Cty. Comm'rs*, 442 A.2d 544, 547 (Me. 1982). Rule 80B review is inadequate when "an alleged deprivation of civil rights occurs before, and not as a part of, the action or inaction for which a plaintiff seeks review." *Cayer v. Town of Madawaska*, 2016 ME 143, ¶ 16, 148 A.3d 707 (citation omitted). On the other hand, when a plaintiff alleges a violation of their due process rights

13

arising from a Town's determination in an administrative proceeding, that plaintiff "has available Rule 80B review to correct any process errors" and Rule 80B review is exclusive. *Id.* ¶¶ 16-17.

In its Complaint, plaintiff alleges a significant conspiracy to deprive it of its rights to operate its business established by the Consent Decree, MAPA, and the United States and Maine Constitutions. The Complaint's allegations concern actions both inside and outside the realm of administrative proceedings. Taking the allegations in the Complaint as true, it is not apparent that Rule 80B relief is available or adequate. Thus, the court declines to dismiss the independent claims at this stage. To the extent that plaintiff's declaratory judgment claims mirror their requests for Rule 80B review, however, Rule 80B relief is exclusive and the court will not enter declaratory relief.

### d. Plaintiff's Section 1983 Claims

In Count VI, plaintiff brings unspecified constitutional claims pursuant to 42 U.S.C. § 1983. In their motion to dismiss, defendants argue that plaintiff has not stated viable due process or First Amendment claims.

Although plaintiff's Complaint alleges that defendants violated its rights of "freedom of expression and free speech," the Complaint is does not specify exactly how such violations occurred. In their opposition and at oral argument, however, plaintiff's counsel represented that plaintiff's First Amendment claim is premised on the Town's reprisal for Dubois Livestock's tone it has taken in communications with the Town. Although this specific allegation is not included in the Complaint, the court finds that, given Maine's notice pleading standard and the significant allegations in the Complaint related to a concerted effort to improperly shut down Dubois Livestock's composting operation, defendants were on notice of such a claim and it is proper to

14

allow plaintiff an opportunity to amend the Complaint to more definitely reflect its First Amendment and Due Process claims. Thus, the court declines to dismiss Count VI.

### e. Whether APB Properly Applied Consent Decree

Next, defendants claim that plaintiffs' Complaint fails to state a claim for relief because their claims are "based on an untenable construction of the Consent Decree's pertinent language." (Defs.' Mot. Dismiss 13.)

Plaintiffs' central argument is that the APB had a "mandatory duty" to grant the Application and that their denial of Dubois Livestock's Application is thus in error. Plaintiffs derive this argument from the language of Section 1(b) of the Consent Decree, which provides:

> The performance criteria specified in the [Land Use Ordinance] for the issuance and reissuance of all solid waste processing facility renewal permits at the Site, hereinafter shall be deemed to have been satisfied by the submissions described below or deemed inapplicable as a result of Dubois' grandfathered status.

(Defs.' Ex. B § 1(b).)

Defendants, however, claim that this interpretation is contrary to the Consent Decree's plain language. Specifically, defendants argue:

> In certain respects, [the Land Use Ordinance's] performance criteria reinforce a number of State regulations or license requirements. Therefore, it makes perfect sense to rely upon compliance with those State regulations or license requirements to address the concerns of those [Land Use Ordinance] criteria. In other respects, provisions in the Town's [Ordinance] – such as the prohibition against solid waste operations in the R-4 district – were at that time arguably not applicable to Dubois Livestock's operation due to grandfathering.

(Defs.' Opp. 14.) Essentially, defendants argue that the reference to deeming provisions of the Land Use Ordinance inapplicable due to Dubois Livestock's grandfathered status only applies to a portion of the Ordinance's provisions, and that the submissions are still necessary to completely satisfy the Ordinance's requirements pursuant to the Consent Decree.

15

The court recently addressed this same issue upon a motion for contempt filed by the individual plaintiffs in CV-15-204 and CV-15-275. Although Dubois Livestock did not join in the individual plaintiffs' motion, it was a party to the underlying actions. In denying the motion, the court interpreted the Consent Decree to unambiguously require Dubois Livestock to provide the submissions found in Sections 1(b)(i) and (ii) in order for the APB to grant their permit Application. Because they failed to provide such submissions, the court found that the Town and its officials were not in contempt.

Dubois Livestock raises the exact same issue here. The court incorporates the court's decision on the motion to contempt in CV-15-204 and 275 herein and holds that plaintiff likewise declines to adopt plaintiff's reading of the Consent Decree.[3] Thus, plaintiff's causes of actions premised on this reading of the Consent Decree, specifically Counts I and II, do not state a claim upon which relief may be granted and are hereby dismissed.

However, plaintiff's claims are not only premised on an improper reading of the Consent Decree. To the extent that plaintiff asserts that the Town's regulation of Dubois Livestock violated MAPA because it was following the best management practices or that the Town engaged in an illegal conspiracy to deprive plaintiff of its right to operate an agricultural composting facility, plaintiff's claims survive.

### f. Plaintiff's Motion to Specify Future Course of Proceedings

Because the court does not dismiss plaintiff's independent claims, the court will grant plaintiff's motion to specify the future course of proceedings. The court will enter a standard

---

[3] The court also notes that plaintiff may now be collaterally estopped from litigating the issue because it had a full and fair opportunity to litigate the issue in CV-15-204 and 275. *See Macomber v. Macquinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131 ("The collateral estoppel prong of res judicata is focused on factual issues, not claims, and asks whether a party had a fair opportunity and incentive in an earlier proceeding to present the same issue or issues it wishes to litigate again in a subsequent proceeding.")

16

scheduling order for discovery related to the independent claims. However, because AP-18-2 and AP-18-5 are dismissed in related orders, this court declines plaintiff's request to consolidate this action with those related cases.

In this motion, plaintiff also requests trials on the merits for its Rule 80B claims pursuant to M.R. Civ. P. 80B(d). However, because plaintiff has not provided the court with a detailed evidentiary offer of proof, the motion is denied. *See Ryan v. Camden*, 582 A.2d 973, 975 (Me. 1990) ("Our procedural rules require a party to file with a motion for trial of the facts 'a detailed statement, in the nature of an offer of proof, of the evidence that the party intends to introduce at trial.' M.R. Civ. P. 80B(d). That statement must be 'sufficient to permit the court to make a proper determination as to whether any trial of the facts as presented in the motion and offer of proof is appropriate under this rule and if so to what extent.' *Id.* Plaintiff failed to provide such a detailed statement and offered nothing more than vague allegations.").

## IV.  CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss Counts I and II but denies the motion as to Counts III, IV, V, and VI. Plaintiff's motion to extend the deadline to file a Complaint for review of the November 29, 2017 ZBA decision is granted and the deadline is retroactively extended until January 30, 2018. Further, plaintiff's motion to consolidate this case with those brought by the individuals in AP-18-02 and AP-18-05 is denied. Finally, although plaintiff's motion to specify the course of proceedings is granted, but the court denies plaintiff's request for a trial on the merits of its Rule 80B claims.

The clerk shall make the following entry on the docket:

Plaintiff's motion to extend deadline to file Rule 80B complaint for review of the Arundel Zoning Board of Appeals decision dated November 29, 2017 is hereby GRANTED. The deadline to file such appeal is extended to January 30, 2018.

Defendants' motion to dismiss is hereby GRANTED in part and DENIED in part. Counts I and II are hereby dismissed. The motion is denied as to Counts III, IV, V, and VI.

Plaintiff's motion to consolidate, to intervene and for the suspension of all deadlines is hereby DENIED.

Plaintiff's motion to specify course, for discovery, and for trial on the merits of all claims is hereby GRANTED in part and DENIED in part. The court will enter a standard scheduling order for plaintiff's remaining independent claims, Counts III and VI. However, the court denies plaintiff's requests for trial on the merits of its 80B appeals.

SO ORDERED.

DATE: June ___, 2018
July 9

_____
John O'Neil, Jr.
Justice, Superior Court

ENTERED ON THE DOCKET ON: 7/9/18

18

ALFSC-AP-18-003


ATTORNEY FOR PLAINTIFF/APPELLANT:

EDWARD S. MACCOLL, ESQ.
THOMPSON MACCOLL & BASS, LLC
15 MONUMENT SQUARE, 4TH FLOOR
PORTLAND  ME  04101


ATTORNEY FOR DEFENDANTS/APPELLEES :


LEAH RACHIN, ESQ.
BERGEN & PARKINSON
62 PORTLAND RD, STE 25
KENNEBUNK  ME  04043

AND

JOHN J. WALL, III, ESQ.
MONAGHAN LEAHY, LLP
PO BOX 7046
PORTLAND  ME  04112-7046