STATE OF MAINE
AROOSTOOK, ss

SUPERIOR COURT
Civil Action
Docket No. CV-18-0135

RICHARD CAYER and ANN CAYER,

Plaintiffs

v.

TOWN of MADAWASKA,

ROBERT OUELLET,

CHRISTINA THERRIEN,

VINCE FRALLICIARDI,

JEFF ALBERT,

DON CHASSE,

Defendants

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

The matter pending before the Court is a motion for summary judgment filed by the defendants Town of Madawaska, Robert Ouellet, Christina Therrien, Vince Frallicciardi, Jeff Albert, and Don Chasse. The motion seeks summary judgment on all plaintiffs Ann Cayer and Richard Cayer's claims against the defendants set forth in the plaintiffs' complaint. Those claims are based on Defendants alleged conduct in bringing and maintaining two civil enforcement actions against Plaintiffs on behalf of the Town of Madawaska for purported land use violations relating to Plaintiffs' property at 57 Chapel

1

Road in Madawaska. Plaintiffs have asserted the following claims: (1) "wrongful use of civil proceedings – 2010 Rule 80K enforcement action"; (2) "wrongful use of civil proceedings – 2014 Rule 80K enforcement action"; (3) "abuse of process – 2010 Rule 80K enforcement action"; (4) "abuse of process – 2014 Rule 80K enforcement action"; (5) "violation of federal civil rights – 42 U.S.C. § 1983"; (6) "violation of Maine Civil Rights Act – 5 M.R.S.A. § 4681 et seq."; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress. (Pls.' Amd. Compl. 9-14.) The Court has reviewed all of the parties' submissions and the applicable law. The defendants' motion is now in order for decision.

## I.   STANDARD OF REVIEW

The Court will grant a properly supported motion for summary judgment if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case." *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. A genuine issue exists "when there is sufficient evidence for a fact-finder to choose between competing versions of the fact," *Id.* ¶ 11, "even if one party's version appears more credible or persuasive." *York Cty. v. PropertyInfo Corp.*, 2019 ME 12, ¶ 16, 200 A.3d 803.

The moving party has the initial burden of proving the absence of any genuine, material factual issues through a properly supported statement of material facts (S.M.F.) and of proving that the facts presented in that S.M.F., left uncontroverted, would entitle the moving party to judgment as a matter of law at trial. *See* M.R. Civ. P. 56(e); *Jennings v. Maclean*, 2015 ME 42, ¶ 5, 114 A.3d 667; *see also* 3 Harvey & Merritt, *Maine Civil Practice*

2

§ 56:6 at 242 (3d, 2018-2019 ed.) ("The initial burden under Rule 56 lies with the moving party to demonstrate clearly the absence of a genuine issue of material fact."). In determining whether the summary judgment record reveals a genuine dispute of material fact, the Court examines the facts, including any reasonable inferences that may be drawn therefrom, in the light most favorable to the nonmoving party. *See e.g.*, *McCandless v. Ramsey*, 2019 ME 111, ¶ 11, 211 A.3d 1157; *Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 12, 140 A.3d 1242; *Maine Civil Practice* § 56:6 at 242. The question of whether the moving party has initially shown that he or she is entitled to judgment as a matter of law, depends on whether the moving party bears the ultimate burden of proof on the particular claim or defense at issue on the motion.

In this case, the defendants' have moved for summary judgment on the grounds that the plaintiffs' claims are barred by the notice and filing deadline requirements of the Maine Tort Claims Act (MTCA), other applicable statutes of limitation, governmental immunity under § 8103 of the MTCA, discretionary immunity under § 8104-B of the MTCA, and common law qualified immunity. All of these are affirmative defenses on which the defendants would bear the ultimate burden of proof at trial. M.R. Civ. P. 8(c). Accordingly, as to each affirmative defense, the defendants bear the initial burden of proving that the facts presented in their S.M.F. establish each element of the defense such that the defendants would be entitled to judgment as a matter of law on the issue if the same evidence was presented at trial. *See e.g.*, *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020); *York Cty. v. Property Info Corp.*, 2019 ME 12, ¶ 16, 200 A.3d 803; *Cach, LLC v. Kulas*, 2011 ME 70, ¶¶ 8-9, 21 A.3d 1015; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th

3

Cir. 1986). If the defendants produce such conclusive evidence, the burden shifts to the plaintiffs to demonstrate that material factual issues exist for trial regarding the particular defense. *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020); M.R. Civ. P. 56(e).

The defendants have also moved for summary judgment on the grounds that plaintiffs are unable to prove all of the elements of some of their claims. The defendants' initial burden on these matters is less than their burden concerning their affirmative defenses because at trial Plaintiffs would bear the ultimate burden of proving the elements of their claims. To meet their initial burden as the moving party on these other arguments, Defendants must show either that their S.M.F. presents certain facts that would refute an essential element of Plaintiffs' claims or which indicate that Plaintiffs are unable to muster the necessary evidence to set forth a prima facie case. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194-97 (5th Cir. 1986); *see also Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 9, 222 A.3d 1063 (a defendant moving for summary judgment bears the initial burden of establishing that no genuine dispute of material fact exists and that undisputed facts entitle it to a judgment as a matter of law); M.R. Civ. P. 56(e)-(h). If the defendants satisfy this burden, the plaintiffs must respond by producing the evidence necessary to "establish a prima facie case for each element of [his or her] cause of action." *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774. This standard requires only that the plaintiffs produce "enough evidence to allow the [trier-of-fact] to infer the fact at issue and rule in the party's favor." *Id.* If the plaintiffs fail to satisfy this burden as to any essential element of their cause of action, the defendant is entitled to summary judgment on that claim. *Id.* ¶ 12; M.R. Civ. P. 56(e).

4

## II. SUMMARY JUDGMENT RECORD

### A. Defendants' Supporting Statement of Material Facts

The Cayers own land in Madawaska located at 57 Chapel Road (also known on the Town's tax maps as Map 34, Lot 20). (Supp.'g S.M.F. ¶ 1.) On or about June 3, 2010, Plaintiffs received a notice from the Town's code enforcement officer, Robert Ouellet, informing them that he had determined that Plaintiffs were using the property in a manner that was in violation of the Town's shoreland zoning ordinance. (*Id.* ¶¶ 2-3.) This purported violation involved the unauthorized presence of a certain trailer on the premises. (*Id.* ¶¶ 2, 8.) The Town's Board of Selectpersons (BOS) held a meeting on June 29, 2010, concerning this purported violation. (*Id.* ¶¶ 4-7.) Plaintiffs received notice of the meeting, were present, and were given an opportunity to be heard on the matter. (*Id.*) After a discussion, the BOS determined that Plaintiffs had violated the zoning ordinance "and that the plaintiffs would be required to remove a trailer from the property, pay a fine, and enter into a consent decree with the Town." (*Id.* ¶ 7-8.)

Plaintiffs removed the trailer as requested but did not pay the assessed fine or agree to the "consent agreement" offered by the Town. (*Id.* ¶ 10.) In response, the BOS held another meeting on the matter on July 13, 2010, which Plaintiffs were provided notice of and were present at. (*Id.* ¶¶ 13-14.) At this second meeting, the BOS determined that Plaintiffs had not paid the fine or accepted the Town's offered agreement and, based on these determinations, voted in favor of initiating a civil enforcement action against Plaintiffs in the courts under M. R. Civ. P. 80K. (*Id.* ¶¶ 13-15.) The Town commenced this enforcement action by filing a complaint in the District Court on August 11, 2010. (*Id.* ¶

5

16.) It was then transferred to the Superior Court and docketed as Aro-CV-12-0155. The Town's then attorney, Richard Currier, avers that he believed there "were good grounds in fact and law to support the action" when he filed the complaint and during the course of the litigation in that matter. (*Id.* ¶ 21.) The Town's code enforcement officer, Ouellet, and its town manager, Christina Therrien, worked with the Town's attorney regarding this enforcement action when it was in the courts. (*Id.* ¶¶ 23, 25.)

On or about June 4, 2013, Plaintiffs received another notice of violation from the Town's code enforcement officer. (*Id.* ¶¶ 27, 29.) This second notice of violation informed them that the officer had determined that Plaintiffs had violated a Town ordinance by exceeding the scope of a previously issued building permit when Plaintiffs purportedly removed more than 50% of the value of a structure on their property. (*Id.* ¶¶ 27-28.) The Town's Planning Board held a meeting on this matter on July 9, 2013, to determine whether Plaintiffs had removed more than 50% of the market value of the structure. (*Id.* ¶¶ 31-33.) Plaintiffs were given notice of the meeting, were present at it, and were afforded an opportunity to be heard on the matter. (*Id.* ¶¶ 34-35.) After a discussion, the Planning Board determined that Plaintiffs had removed more than 50% of the market value of the structure from their property. (*Id.* ¶ 36.) The Planning Board then decided to revisit the matter at a meeting on August 12, 2013. (*Id.* ¶ 30.) After hearing from Plaintiffs on the matter and a discussion of the issue, the Planning Board determined that Plaintiffs had removed 100% of the market value of the structure that was on their property. (*Id.* ¶¶ 40-41.) Code enforcement officer Ouellet then served Plaintiffs with another notice of violation on or about August 22, 2013. (*Id.* ¶ 30.) This third notice of

violation "referenced a violation of the Town's ordinance with regard to changes to the structure of their property." (*Id.*)

The BOS then held a meeting on September 3, 2013, concerning Plaintiffs' purported violations resulting from their removal of a structure on their property. (*Id.* ¶¶ 44-46.) Plaintiffs had notice of this meeting and on September 2, 2013, requested the BOS postpone the meeting for a later date. (*Id.* ¶¶ 46-47.) At the September 3rd meeting, the BOS rejected Plaintiffs' request to postpone, determined that "Plaintiffs had violated the Town's ordinance by effecting certain changes to [their] property without a proper permit", and to offer Plaintiffs an agreement resolving the violation. (*Id.* ¶¶ 48-50.) Plaintiffs received notice of these determinations in writing on or about September 18, 2013. (*Id.* ¶¶ 51-52.) Apparently, Plaintiffs did not accept the Town's offer so, the BOS held a follow up meeting on the matter on November 5, 2013, which Plaintiffs had notice of and attended. (*Id.* ¶¶ 51-57.) At this meeting, the BOS determined that Plaintiffs had not accepted the Town's offer and decided to bring a civil enforcement action against Plaintiffs under M.R. Civ. P. 80K. (*Id.* ¶¶ 58-59.) The Town commenced this enforcement action by filing a complaint in the District Court on or about April 15, 2014. (*Id.* ¶ 16.) It was then transferred to the Superior Court and docketed as Aro-CV-14-0082. The Town's then attorney, Richard Currier, avers that he believed there "were good grounds in fact and law to support the action" when he filed the complaint and during the course of the litigation in that matter. (*Id.* ¶ 63.) The Town's manager, Christina Therrien, worked with the Town's attorney regarding this enforcement action when it was in the courts. (*Id.* ¶ 67.)

Justice Stewart of the Superior Court conducted a trial management conference regarding the 2010 enforcement action and the 2014 enforcement action on September 6, 2016. (*Id.* ¶¶ 69-70; Aro-CV-2012-0155; Aro-CV-2014-0082.) At this conference, the Cayers accepted the Town's offer to dismiss the enforcement actions with prejudice and without costs. (*Id.* ¶¶ 69-70; Aro-CV-2012-0155; Aro-CV-2014-0082.) The Superior Court then entered an order dismissing the cases with prejudice, closing the cases. (*Id.* ¶ 71; Aro-CV-2012-0155; Aro-CV-2014-0082.)

Defendants assert that all of Plaintiffs' claims in the case at bar, are based on the alleged conduct of the defendants leading to the two Rule 80K enforcement actions the Town brought against Plaintiffs for their purported land use violations and based on the defendants conduct during those enforcement actions. (*Id.* ¶¶ 72-76.) They assert that the only notice of claim that Plaintiffs gave to Defendants was a document mailed to Defendants on November 16, 2016. (*Id.* ¶ 73.)

Defendants had an insurance policy at the time that Plaintiffs commenced this suit. (*Id.* ¶¶ 99-102.) The insurance policy provides that the insurance coverage "is limited to those areas for which governmental immunity has been expressly waived by 14 M.R.S.A. § 8104-A, as limited by 14 M.R.S.A. § 8104-B and 14 M.R.S.A. § 8104-A." (*Id.* ¶ 101.) Defendants assert that they have no other pertinent insurance coverage. (*Id.* ¶ 103.)

## B. Plaintiffs' Opposing Statement of Material Facts

M.R. Civ. P. 56(h)(2) provides that a party who opposes a motion for summary judgment must "submit with its opposition a separate, short, and concise opposing statement." In this opposing statement of material facts (Opp. S.M.F.) the nonmoving

8

party must make statements that "admit, deny, or qualify" each item of the moving party's S.M.F, beginning each statement with the designation "Admitted," "Denied," or "Qualified." If the nonmoving party chooses to "deny" or "qualify" an assertion in the S.M.F., the party must support each denial or qualification with a specific citation to evidentiary material that supports the assertion. The nonmoving party's Opp. S.M.F. may also include objections to factual assertions in the moving party's S.M.F., with a brief statement of the basis for the objection. The nonmoving party may also choose to submit a separate statement with any additional facts (S.A.F.), set forth in separate numbered paragraphs and supported by proper record citations, which the party contends raise a disputed issue for trial. The court "need not consider any additional facts when, . . ., they are improperly commingled in the nonmoving party's paragraphs responding to the moving party's material facts, . . ., and are not set forth in a separate section of additional facts organized in separate numbered paragraphs added pursuant to Rule 56(h)(2)." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 11, 824 A.2d 48. The moving party's S.M.F. and the nonmoving party's Opp. S.M.F. and S.A.F. should be limited to factual matters and are not spaces for the parties to engage in legal arguments with each other on the merits of the issues. *See e.g., Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 4 n.2, 133 A.3d 1021.

In response to Defendants' 18-page S.M.F., Plaintiffs filed a 194-page Opp. S.M.F along with volumes of exhibits but without an accompanying S.A.F. Defendants contend that the Court should disregard the entirety of Plaintiffs' response statement on the grounds that Plaintiffs' submission blatantly fails to comply with the protocol set forth in

Rule 56(h) and explained by the courts. The defendants' characterization of the Opp. S.M.F. is generally correct. The statement is the polar opposite of the "short" and "concise" statement conceived in Rule 56. The Opp. S.M.F. is more than 10 times the length of the S.M.F. Many of Plaintiffs responses improperly commingle legal argument and commingle a great deal of additional facts that often go well beyond admitting, denying, or qualifying the particular assertion in the S.M.F. being responded. Many of Plaintiffs' responses to Defendants' assertions are laden with unnecessary and inflammatory characterizations of the evidence and Plaintiffs own conclusions regarding this evidence. Many responses are also repetitive and duplicative of each other. Many of Plaintiffs assertions also are not properly supported by references to competent evidentiary materials. The incessant commingling of additional facts, legal argument, inflammatory characterizations of the evidence, and other issues often make Plaintiffs' submission difficult to read and to parse what if any of the paragraphs in defendants' S.M.F. are properly controverted or qualified by Plaintiffs' response.

In these circumstances, the Court would be well within its discretion to exclude Plaintiffs Opp. S.M.F. from its consideration of Defendants' motion. *See Oceanic Inn, Inc. v. Sloan's Cove, LLC,* 2016 ME 34, ¶ 4 n.2, 133 A.3d 1021; *First Tracks Invs., LLC v. Murray, Plumb & Murray,* 2015 ME 104, ¶¶ 1-3, 121 A.3d 1279; *Stanley v. Hancock County Commissioners,* 2004 ME 157, ¶¶ 28-29, 864 A.2d 169. Nonetheless, the Court declines Defendants' invitation to exercise this discretion in this case. The Court will not consider any factual assertions in Plaintiffs' Opp. S.M.F. that are not appropriately supported by proper references to evidentiary materials, nor will it consider any additional facts that

10

are improperly commingled in the statement. However, the Court will not discard the entirety of Plaintiffs' response as Defendants' request. Because of the nature of Plaintiffs' response, the Court will not attempt to summarize the contents of Plaintiffs' response here but will instead address the matters raised in Plaintiffs' Opp. S.M.F. as necessary in its analysis of the merits of this motion.

## III.   ANALYSIS

### A. Maine Tort Claims Act

The Legislature enacted the MTCA, 14 M.R.S. §§ 8101-8118, to reestablish the sovereign immunity of governmental entities in Maine from tort claims seeking money damages, after the Law Court abrogated the common law immunity of these entities in *Davies v. City of Bath*, 364 A.2d 1269, 1273 (Me. 1976). *See Joseph & Catherine-Young v. Libby,* Cum-CV-96-473, 1997 Me. Super. LEXIS 206, *4-5 (July 17, 1997) (providing some of the legislative history of the MTCA). Section 8103(1) of the MTCA provides that "except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S. § 8103(1). Subsequent provisions in § 8104-A set forth the limited circumstances under which the Legislature has chosen to waive the immunity of governmental entities. 14 M.R.S. § 8104-A. Another waiver of immunity is found in § 8116 providing that when a governmental entity obtains liability insurance providing coverage for the tort claim brought against the government entity, the governmental entity is deemed to have waived immunity to

the limits of the insurance coverage. 14 M.R.S. § 8116; *Wilcox v. City of Portland*, 2009 ME 53, ¶¶ 6, 12, 970 A.2d 295.

The MTCA additionally provides immunity to employees[1] of governmental entities in certain circumstances. These circumstances are set forth in § 8111(1):

> Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:
>
> . . .
>
> C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;
>
> D. Performing or failing to perform any prosecutorial function involving civil, criminal or administrative enforcement;
>
> E. Any intentional act or omission within the course and scope of employment; provided that such immunity does not exist in any case in which an employee's actions are found to have been in bad faith; or
>
> . . .
>
> The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees, . . .

14 M.R.S. § 8111. The immunity provided to governmental entities and employees under the MTCA extends to tort claims brought against cities and towns, their officials, and

---

[1] The MTCA defines "employee" as meaning "a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds, including elected or appointed officials. . ." 14 M.R.S. § 8102.

municipal employees. *See* 14 M.R.S. § 8102 (municipalities are governmental entities); *True v. Ladner*, 513 A.2d 257, 1986 Me. LEXIS 844 (Me. 1986).

Other than governmental immunity, Defendants' principal argument for summary judgment on many of Plaintiffs claims is that the claims are barred by the MTCA's limitations periods for providing a notice of claim and for commencing suit. The MTCA establishes notice and filing deadlines for tort actions that are brought against governmental entities or their employees. 14 M.R.S. §§ 8107, 8110. At the time this action was commenced, § 8107 provided that a person bringing a tort claim against a governmental entity or governmental employee must file a written notice of the claim with the defendant "within 180 days" after the date the claim accrues, unless a claimant shows "good cause" as to why "notice could not have reasonably been filed" within this notice deadline. 14 M.R.S. § 8107 (2018). Section 8110 further provides that a person seeking to recover on a claim covered by the MTCA must commence their suit in court within 2 years after the cause of action accrues unless the claimant was a minor at the time. 14 M.R.S. § 8110. If the person bringing the claim fails to comply with either § 8107 or § 8110, the claim may not proceed. 14 M.R.S. §§ 8107, 8110; *Cushman v. Tilton*, 652 A.2d 650, 651 (Me. 1995); *Mueller v. Penobscot Valley Hosp.*, 538 A.2d 294, 297 (Me. 1988).

In general, "a cause of action accrues when a plaintiff receive[s] judicially recognized injury." *McLaughlin v. Superintending Sch. Comm.*, 2003 ME 114, ¶ 22, 832 A.2d 782. Tort claims, specifically, accrue "when the plaintiff sustains harm to a protected interest." *Id.* "In other words, [a tort claim] accrues at the point at which a wrongful act

13

produces an injury for which a potential plaintiff is entitled to seek judicial vindication." *Id.*[2]

Civil rights claims brought under either the federal civil rights statute 42 U.S.C. § 1983 or the state civil rights statute are not "tort claims" that are subject to the MTCA's limitations periods or immunity provisions. *See Clifford v. Me. Gen. Med. Ctr.*, 2014 ME 60, ¶¶ 48-51, 91 A.3d 567; *Mueller v. Penobscot Valley Hosp.*, 538 A.2d 294, 295-298 & n.4 (Me. 1988) (holding that the MTCA "was not intended to apply to causes of action for "breach of contract" or to "civil rights actions brought under 42 U.S.C. § 1983" and determining that civil rights claims brought under § 1983 were not tort claims for purposes of the MTCA); *Doe I v. Williams*, 2013 ME 24, ¶ 72, 61 A.3d 718 (the MCRA is patterned after 42 U.S.C. § 1983).

Regarding the analysis of limitations defenses at the summary judgment stage, the Law Court has stated that "[w]hen a defendant asserts in a motion for summary judgment the affirmative defense of the expiration of a limitations period, the defendant bears the burden of assembling a record of undisputed facts demonstrating that the plaintiff's action is time-barred by the applicable statute of limitations." *York Cty. v. PropertyInfo Corp.*, 2019 ME 12, ¶ 16, 200 A.3d 803. To withstand such a motion, the plaintiff "bears the burden of demonstrating that the summary judgment record generates a factual dispute about the running of the limitations period." *Id.*

---

[2] The Law Court has recognized certain limited exceptions to this rule, but none are applicable in this case. *McLaughlin*, 2003 ME 114, ¶ 22, 832 A.2d 782.

14

## B. Count I (Wrongful Use of Civil Proceedings)

To hold a defendant liable for wrongful use of civil proceedings the plaintiff must demonstrate each of the following elements: (1) the defendant has "initiated, continued, or procured civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the civil proceedings are based, and (3) the proceedings have terminated in favor of the party against whom [the proceedings] are brought." *Pepperell Trust Co.*, 1998 ME 46, ¶ 17, 708 A.2d 651. The third element may be proven by demonstrating "the favorable adjudication of the [allegedly wrongful civil] claim by a competent tribunal, the withdrawal of the claim by the initial litigant, or the dismissal of the claim." *Id.* ¶ 18.

Count I is a tort claim that is subject to the immunity and limitations provisions of the MTCA. Relying on this fact, Defendants collectively argue that Plaintiffs cannot proceed on Count I because: (i) the Town is entitled to governmental immunity and no waiver of immunity applies and (ii) the Town's employees and officials, who Plaintiffs have sued, are protected by discretionary function immunity pursuant to § 8111(1)(C). Defendants' do not argue that Count I is barred by the limitations periods in §§ 8107 and 8110. *See, Pepperell Tr. Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶¶ 17-21, 708 A.2d 651(a 'wrongful use of civil proceedings' claim accrues only when the underlying proceeding concludes favorably to the party bringing the wrongful use of proceedings claim).

Defendants are correct that Plaintiffs' wrongful use of civil proceedings claim against the Town is barred by the MTCA's general grant of immunity. The Town is a

governmental entity covered by the MTCA and none of the enumerated waivers of immunity in § 8104-A are applicable. Nor do any facts in the summary judgment record indicate that the Town has waived its immunity from the claim by acquiring insurance coverage. (*See* Supp.'g S.M.F. ¶¶ 99-103; Pls.' Opp. S.M.F. ¶¶ 99-103.) Accordingly, the Court grants summary judgment to the Town on Count I.

The individual Defendants' discretionary immunity argument requires a more involved discussion. Maine's courts use a four-factor test to determine whether a governmental employee is entitled to discretionary function immunity:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Lawson v. Willis*, 2019 ME 36, ¶ 9, 204 A.3d 133. "The first, second, and fourth factors help determine whether the governmental employee was performing or failing to perform an official function or duty," while "[t]he third factor helps determine whether that function or duty was discretionary in nature, as opposed to merely ministerial." *Id.* To qualify as a "discretionary act" the defendant's activity must be one that "required the exercise of judgment or choice." *Id.* The Law Court elaborated on this topic in *Chiu v. City of Portland*, 2002 ME 8, ¶ 20, 788 A.2d 183, explaining that "[c]onduct by a governmental employee that involves the formulation of a basic government policy or that is pursuant to a statute, regulation, or guideline that, expressly or impliedly, presumptively grounds the conduct

16

in government policy, is discretionary." In contrast, a mere "ministerial act" — an action that "is mandatory and requires no personal judgment or choice" — does not qualify as a "discretionary act" under § 8111(1)(C). *Lawson*, 2019 ME 36, ¶ 9, 204 A.3d 133.

"If an employee is entitled to discretionary function immunity, he will be shielded from liability for those discretionary functions even if he abuses that discretion." *Hilderbrand v. Wash. Cty. Comm'rs*, 2011 ME 132, ¶ 9, 33 A.3d 425; 14 M.R.S. § 8111(1)(C) (stating immunity exists "whether or not the discretion is abused"). However, "discretionary function immunity does not extend to actions 'that so clearly exceed the scope of the official's authority that the official cannot be said to be acting in an official capacity.'" *Doe v. Graham*, 2009 ME 88, ¶ 19, 977 A.2d 391 (quoting *Selby v. Cumberland Cty.*, 2002 ME 80, ¶ 6 n.5, 796 A.2d 678). Nonetheless, "[a]s long as the decisions are made in furtherance of a governmental program or policy, the governmental actor is shielded by the discretionary function immunity in the MTCA, even if the discretion is abused." *Carey v. Me. Bd. of Overseers of the Bar*, 2017 Me. Super. LEXIS 269, at *21 (Oct. 25, 2017), *aff'd*, 2018 ME 119, 192 A.3d 589 (explaining the Law Court's opinion in *Graham*); *see also Grossman v. Richards*, 1999 ME 9, ¶ 8, 722 A.2d 371 (concluding that a certain city's "alderman" was entitled to discretionary function immunity on claims arising from the alderman's making of allegedly defamatory comments relating to the distribution of public monies and conflicts of interest during a televised city council meeting, while the alderman was acting as the alderman). "[T]he purpose of the discretionary function immunity is to preserve "independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits." *Grossman*, 1999 ME 9, ¶ 6, 722 A.2d 371;

17

*see also Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 425 (Me. 1987) ("Tort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function.").

The particular challenged acts here are: (i) the actions that code enforcement officer Ouellet and his supervisor, Christina Therrien, took in developing the Town's basis for its first 80K enforcement action against Plaintiffs and recommending it for enforcement; (ii) the decision of the Town's BOS member Don Chasse to authorize the suit along with the other selectpersons; and (iii) Ouellet, Chasse, Therrien, Albert, and Fralliciardi's actions maintaining that 80K enforcement action. Defendant's S.M.F. establishes that all of these acts and decisions plainly involved a basic governmental policy, the enforcement of the Town's zoning ordinance. The S.M.F. also establishes that the actions of these defendants such as, determining a violation existed, issuing a notice of violation, voting that a violation had occurred, voting to bring the enforcement action, and choosing to maintain that action in the courts, are all actions of a sort that denote activity undertaken in furtherance of the Town's policy and objective of enforcing the zoning ordinance. It is indisputable that the challenged actions by these defendants would require "the exercise of basic policy evaluation, judgment, and expertise" regarding the Town's zoning ordinance and the BOS's duties. It is also readily apparent from Defendants' S.M.F. that the Town of Madawaska's BOS had the requisite authority to decide to initiate the enforcement action and continue it, that the code enforcement officer had the requisite authority to make a determination that Plaintiffs violated the ordinance, and that

Therrien had the authority to supervise Ouellet and attorney Currier's activities concerning the enforcement action.

Plaintiffs argue in response that Ouellet, Therrien, and the BOS were aware that Plaintiffs had not actually violated the Town's zoning ordinance when they, respectively, issued the notice of violation and then decided to commence the enforcement action. They argue that these defendants were aware that the suit was based on false claims and that the defendants procured, instituted, and continued the action for the purpose of punishing Plaintiffs for their involvement in local politics. Relying on these assertions, Plaintiffs claim that all of these defendants were acting outside the scope of their respective duties and that therefore, the defendants were not acting in their official capacities. To support their assertions, Plaintiffs cite to various portions of the minutes of the Town's BOS meetings on the matter, the Town ordinance, and documents such as the notice of violation and complaint.

The Court has reviewed Plaintiffs' record references on these matters but contrary to Plaintiffs' assertions, the court finds that those materials do not generate a reasonable inference that the Defendants, individual or collectively, undertook or continued the enforcement action against Plaintiffs in bad faith. Plaintiffs' assertions that the defendants intentionally brought and maintained a bogus enforcement action against Plaintiffs to punish them for their participation in the Town's government are merely Plaintiffs' own speculative conclusions and skewed characterizations of the evidence. Again, unless a governmental employee's actions while fulfilling his or her discretionary function "clearly exceed[ ] the scope" of the employee's authority, the employee will be

19

deemed to have been acting in his or her official capacity. *Hilderbrand*, 2011 ME 132, ¶ 9, 33 A.3d 425. Here, the evidence Plaintiffs have presented does not reasonably indicate that any of the Defendants' conduct relating to the 2010 enforcement action clearly exceeded the scope of any of their respective authorities and does not generate a genuine factual dispute on the issue. Even if it were shown that Defendants were ultimately incorrect that Plaintiffs violated the Town's ordinance, that finding would not lead to a conclusion that Defendants were acting for an improper reason in undertaking and maintaining the enforcement action.

Based on the parties' respective showings and the applicable law, the Court concludes that there is no genuine issue of material fact in dispute and that the Town has immunity from Count I under § 8103 of the MTCA. The Court further concludes that the other defendants are protected from personal civil liability by discretionary function immunity under § 8111. The Court therefore grants summary judgment to all Defendants on Count I of the complaint.

### C. Count II (Wrongful Use of Civil Proceedings)

The Court's analysis regarding Count I is the same as to Count II. The Town has immunity from Count II as it constitutes a tort claim covered by the MTCA's general grant of immunity and no waiver of immunity is applicable. The individual defendants are protected by the MTCA's discretionary immunity provision in § 8111(1)(C), as they claim, if these defendants are able show that their challenged actions were undertaken in the course of fulfilling a discretionary function.

20

The challenged acts here consist of: (i) the actions the Town's employees and officials undertook in issuing the notice of violation that formed the basis of the 2014 enforcement action; (ii) the actions of these individuals in recommending the purported violation for enforcement; (iii) the decisions of the Town's BOS and Planning Board members in determining that Plaintiffs violated the Town's ordinance; (iv) the respective defendants' decisions to bring a civil suit against Plaintiffs for the violation and (v) the respective defendants' decisions to maintain and litigate the enforcement action in the courts. On these matters, the Defendant's S.M.F. contains factual assertions supported by the record that establish that the defendants' actions involved a basis governmental policy or function, that the defendants' actions and decisions were undertaken in furtherance of the Town's policy and objective of enforcing its ordinance, that the Defendants actions and decisions would "require the exercise of basic policy evaluation, judgment, and expertise" regarding the Town's zoning ordinance and other applicable rules, and that the defendants had the requisite authority to undertake their respective actions and decisions regarding the 2014 enforcement action against Plaintiffs. The Town defendants, therefore, are entitled to summary judgment on the grounds that they are protected by discretionary function immunity under § 8111(1)(C), unless Plaintiffs present facts which generate a genuine and material dispute on the issue.

Plaintiffs have responded by raising similar arguments to those they raised as to Count I. They argue that the defendants never actually believed that Plaintiffs violated the Town's ordinance and acted maliciously when they issued the notice of violation, determined a violation existed, and then decided to commence the enforcement suit and

21

litigate it. They argue that the defendants brought this enforcement suit against Plaintiffs knowing it was based upon false claims and for the purpose of punishing Plaintiffs. Relying on these assertions, Plaintiffs claim that all of these defendants were acting outside the scope of their respective duties and that therefore, the defendants were not acting in their official capacities.

However, after reviewing the record, the Court finds that a reasonable fact-finder could not find that the facts properly set forth in the summary judgment record show that the defendants undertook their respective actions in bad faith and for the purpose of punishing Plaintiffs. The record indicates that there is no genuine dispute as to whether these defendants were acting outside the scope of their respective authorities during the challenged acts at issue.[3] Based upon the materials properly set forth in the record, the

---

[3] As to defendant Albert, Plaintiffs' Opp. S.M.F. asserts that Albert impersonated a Town of Madawaska Planning Board Member at a board meeting on May 10, 2012, concerning Plaintiffs' application for the permit for which Code Enforcement Officer Ouellet eventually issued a notice for the violation on June 4, 2013. To support their assertion that Albert was impersonating a Planning Board member they refer to a document appearing to be a record of Albert's official oath of office and acceptance of appointment. This document indicates that Albert took the oath and accepted the office on June 28, 2012, after the May 10, 2012 Planning Board meeting. This document generates a factual dispute as to whether Albert acted in his official capacity at the May 10, 2012 planning board meeting. However, the Planning Board's actions at the May 10, 2012 meeting did not concern the 2014 enforcement action brought against Plaintiffs, it concerned only the issuance of the permit that the Town would eventually determine Plaintiffs violated. Plaintiffs' reference to Albert's official acceptance of appointment, does not indicate that Albert was acting outside his official capacity at the actual Planning Board meetings concerning Plaintiffs' June 4, 2013 notice of violation, which occurred after Albert was officially sworn in. The May 10, 2012 Planning Board meeting does not relate to the Town's 2014 enforcement. Accordingly, if Albert was in fact acting as a member of the Planning Board at the May 10, 2012 meeting as Plaintiffs' claim, it would not support a determination that Albert was acting outside of his official capacity at the actual Planning Board meetings when he voted and undertook the other actions that Plaintiffs base their wrongful use of civil proceedings claim against him upon. Moreover, the record does not indicate Albert was involved in the Town BOS's decision to commence the enforcement action against Plaintiffs nor involved in the litigation of that claim, nor does the record support Plaintiffs' conclusions that Albert was conspiring with the other defendants to bring a meritless 80K enforcement action against the Town to punish them for their participation in local government.

22

Court concludes that all of the individual defendants are entitled to summary judgment on Count II based on their immunity defense.

For all of the reasons set forth above, the Court grants summary judgment to all Defendants on Count II of Plaintiffs' complaint.

## D. Count III and Count VI (Abuse of Process)

An abuse of process claim may arise from "misuse of individual legal procedures, such as discovery, subpoenas, and attachment, after a lawsuit has been filed, and the misuse of the procedures for obtaining a lien." *Jennings*, 2015 ME 42, ¶ 7, 114 A.3d 667. "The filing of a lawsuit qualifies as a regular use of process and cannot constitute abuse of process, even if the filing was influenced by an ulterior motive." *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 22, 901 A.2d 189. To prove a defendant is liable for abuse of process, the plaintiff must establish: (i) the defendant "initiated or used a court document or process in a manner not proper in the regular conduct of proceedings, (ii) with the existence of an ulterior motive, and (iii) resulting in damages to [the plaintiff]." *Tanguay v. Asen*, 1998 ME 277, ¶ 5, 722 A.2d 49; *Jennings*, 2015 ME 42, ¶ 6, 114 A.3d 667; *Saliem v. Glovsky & Fogg*, 132 Me. 402, 405-407 (1934); *see also Simon v. Navon*, 71 F.3d 9, 15 (1st Cir. 1995) (under Maine law, "the two basic elements of abuse of process are a bad motive, and the use of a legal process for an improper collateral objective").

The use of a legal process is improper if the defendant used the legal process "to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do." *See Saliem*, 132 Me. 402, 405 (1934); *see also* RESTATEMENT (SECOND) OF TORTS § 682 (1977). "An 'ulterior motive' may consist of

23

seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process." *Thompson v. Brewster*, Kno-CV-84-0015, 1988 Me. Super. LEXIS 129, at *47 (May 25, 1988). The existence of a wrongful motive may be inferred from an improper act but an improper act cannot be inferred from a wrongful motive alone. *Simon*, 71 F.3d at 17 (1st Cir. 1995) (applying Maine law); *Saliem*, 132 Me. at 405-407. If the defendant's use of process is "itself regular, the motive, ulterior or otherwise, is immaterial" — the defendant's "bad intent must culminate in an actual abuse of the process by perverting it to a use to obtain a result which the process was not intended by law to effect." *Saliem*, 132 Me. at 405-406. In other words, there must be a sufficient basis in the record for finding both that the defendant engaged in some improper act and that this act was the means to further an improper purpose. *Simon*, 71 F.3d at 19.

Just as the Town has § 8103 immunity from Plaintiffs' wrongful use of civil proceedings claims, it has § 8103 immunity from Plaintiffs' abuse of process claims. It is clearly established in the record that the Town is a governmental entity, Plaintiffs' abuse of process claims are tort claims, and that none of the exceptions to governmental immunity in § 8104-A or the other sections of the MTCA apply to Plaintiffs' abuse of process claims against the Town. Further analysis of the point is unnecessary. The Court grants summary judgment to the Town on Count III and IV of Plaintiffs' complaint.

The Town's employees and officials raise affirmative defenses against this Count based on the notice and filing limitation provisions found in § 8107 and § 8110 of the MTCA and the immunity provisions in § 8111(1). As to the notice of claim of defense, the

24

defendants assert that the only notice of claim provided to them was "mailed on November 16, 2016." Relying on the 2018 version of § 8107, Defendants argue that the only legal processes that can be used to support Count III and IV are those legal processes occurring in the 2010 and 2014 enforcement actions after May 20, 2016 (which is 180 days prior to November 16, 2016.) They argue that the docket records in those actions show that Defendants only engaged in two legal processes occurring after May 20, 2016, before the cases were dismissed by agreement on September 7, 2016. These legal processes are a subpoena to testify issued by the defendants to defendant Ouellet and Defendants' attorney's participation in the September 7, 2016 conference that culminated in the parties' agreement to dismiss. They argue that neither of these actions are indicative of an improper act or ulterior motive and therefore, they are entitled to summary judgment on Count III and IV. They further argue that the limitations period in § 8110 bars Plaintiffs from pursuing an abuse of process claim on any use of legal process that did not occur within two years of the date they filed their complaint and that none of the defendants' actions within that period provide the basis for an abuse of process claim. The Court will address each of these matters in turn.

The Defendants have failed to establish their limitation defense related to the notice of claim on this motion. As the Court previously noted, "[w]hen a defendant asserts in a motion for summary judgment the affirmative defense of the expiration of a limitations period, the defendant bears the burden of assembling a record of undisputed facts demonstrating that the plaintiff's action is time-barred by the applicable statute of limitations." *York Cty.*, 2019 ME 12, ¶ 16, 200 A.3d 803. The defendants' assertion in ¶ 73

25

of their S.M.F. that the only notice of claim Plaintiffs provided was on November 16, 2016, is not properly supported by a record reference. ¶ 73 cites solely to Plaintiffs' responses to Defendants' requests for production, dated June 30, 2020, at request No. 13. The cited portion of the discovery document indicates that Defendants requested Plaintiffs to produce "all notices of claim or demands for payment. . . served by you or on your behalf. . . that pertains to the occurrence or any injuries or damages that you claim were caused by the occurrence" and that Plaintiffs responded by writing "See attached documents and disk labelled 'USB.'" Plaintiffs did not respond that the notice of claim was mailed on November 16, 2016, nor are there documents or a "disk labelled USB" attached to Defendant's S.M.F. exhibit indicating that the notice of claim was mailed on November 16, 2016. Because ¶ 73 is not properly supported and no other portion of the S.M.F. sets forth the date that Plaintiffs gave their notice of claim, Defendants have failed to carry their burden of proof on their notice of claim limitation defense.

The Plaintiffs filed their complaint against Defendants with this Court on August 31, 2018.[4] Section 8110 provides in pertinent part, "[e]very claim against a governmental entity or its employees permitted under this chapter is forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues." 14 M.R.S. § 8110. The record reflects that the actions of the Defendants relative to the Plaintiffs' claims set forth in Counts III and IV, that occurred after August 31, 2016 only involved participation in the September 7, 2016 conference that culminated in the parties' agreement resulting in dismissal of all claims in both of the pending enforcement

---

[4] The court notes the date of the filing in this matter pursuant to M.R.Evid. 201.

actions. Plaintiffs' claims for abuse of process based on conduct occurring before August 31, 2016 are barred by § 8110.

The success of Defendants' other defenses and arguments depends somewhat on the level of involvement of each of the defendants in the 2010 and 2014 enforcement actions after the Town decided to file suit in those actions. The summary judgment record establishes that other than voting in favor of bringing the 2010 and 2014 enforcement actions against Plaintiffs at Town BOS meetings, defendants Fralliciardi and Chasse were not involved in the litigation of the 2010 and 2014 enforcement suits. The record also establishes that defendant Albert did not vote on bringing the actions against Plaintiffs nor otherwise involved in litigating the Town's enforcement actions against them. Plaintiffs' have failed to appropriately set forth facts that controvert those assertions in Defendants' S.M.F. or set forth additional facts establishing Fralliciardi, Chasse, or Albert's involvement in the Town's use of court process during those enforcement actions. For these reasons, the Court concludes that Plaintiffs are unable to and have failed to set forth a prima facie case of abuse of process against Fralliciardi, Chasse, and Albert for actions pertaining to the 2010 and 2014 enforcement actions. The Court therefore grants summary judgment to defendants Fralliciardi, Chasse, and Albert on Counts III and IV.

The remaining claims in Count III and IV are those alleged against defendants Therrien and Ouellet. As to Therrien and Ouellet, the Defendants' argument that Plaintiffs are unable to prove the essential elements of the tort is not adequately supported by their S.M.F. On this issue, Defendants assert only that (i) Therrien and

27

Ouellet monitored the work of and worked with the Town's attorney during that litigation and (ii) "[a]ll of the documents filed and served on behalf of the Town in the enforcement action filed in 2014 were used in a manner that was proper in the regular conduct of the proceeding and they were not filed or served for any ulterior motive." (Supp.'g S.M.F. ¶¶ 23, 25, 64-65, 67.) None of these assertions are sufficient to refute an essential element of Plaintiffs' claim or demonstrate that Plaintiffs are unable to obtain evidence supporting those essential elements. Defendants' assertion in ¶ 64 that all of the legal documents filed and served on behalf of the Town were "used in a manner that was proper" and "were not filed or for any ulterior motive" is a legal conclusion that tracks the elements of the tort and is essentially taken verbatim from ¶¶ 10 and 16 of Town's attorney, Richard Currier's affidavit. Such an assertion is not a proper statement of fact and does not lend support to Defendants' motion. *See e.g., Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 8 n.6, 770 A.2d 653; *Town of Orient v. Dwyer*, 490 A.2d 660, 662 (Me. 1985) ("Conclusions of fact and law do not properly belong in an affidavit filed in support of a motion for summary judgment.").

The Court must proceed to review Defendants' Ouellet and Therrien S.M.F. to determine whether they have established that they are entitled to immunity under § 8111. The portion of § 8111 most applicable in this circumstance is subsection (D) which provides that governmental employees are "absolutely immune from personal civil liability" for "performing or failing to perform any prosecutorial function involving civil, criminal, or administrative enforcement." (emphasis added). In addition to the assertions that Therrien and Ouellet monitored and worked with the Town's attorney Richard

28

Currier on the prosecution of the 2010 and 2014 enforcement actions, the S.M.F. also asserts that Ouellet was "responsible for enforcement of the Town's land use and development code" and that Town Manager Therrien was the direct supervisor of Ouellet and "oversaw the administration of the Town of Madawaska including the execution of all laws and ordinances." (Supp.'g S.M.F. ¶¶ ¶¶ 23, 25, 64-65, 78, 80-82.) These and the other facts set forth in the S.M.F. are sufficient to establish that Therrien and Ouellet were responsible for facilitating and overseeing the Town's prosecution of the 2010 and 2014 enforcement actions brought against Plaintiffs. It is also readily apparent that Ouellet and Therrien's part in monitoring and approving attorney Currier's litigation of these enforcement actions fall within the broad scope of "performing or failing to perform any prosecutorial function. . ." that § 8111(1)(D) refers to.

Plaintiffs again try to counter the Defendants' immunity defense by arguing that Ouellet and Therrien's uses of legal procedure while working with attorney Currier on the 2010 and 2014 enforcement actions were undertaken in bad faith for the purpose of punishing Plaintiffs for their participation in local politics. They argue that because Ouellet and Therrien undertook these actions in bad faith, they were not acting in their official capacity and cannot claim the protection of § 8111 immunity. The Court has reviewed Plaintiffs' evidence as to these matters and finds that a jury could not reasonably conclude that Ouellet and Therrien were acting in bad faith for the purpose of punishing Plaintiff. Plaintiffs' assertions on these matters generally consist of their own speculation and conclusions and are not properly supported by evidentiary materials. The Court thus concludes that defendants Ouellet and Therrien have

29

established that they are immune from liability on Counts III and IV under § 8111(1)(D) and that Plaintiffs have failed to set forth facts generating a genuine material dispute on the issue of immunity.

The Court grants summary judgment to the Town on Counts III and VI of the complaint on the grounds that the Town is immune from suit under § 8103 of the MTCA. The Court grants summary judgment to defendants Chasse, Fralliciardi, and Albert on Counts III and IV on the grounds that Plaintiffs are unable to sustain a prima facie case of abuse of process against these defendants and based upon § 8110. The Court grants summary judgment to defendants Therrien and Ouellet on Counts III and IV on the grounds that they are immune from personal liability under § 8111(1)(D) of the MTCA and based upon § 8110.

### E. Count V (Federal Civil Rights Claim, 42 U.S.C. § 1983)

Count V of the complaint alleges that all of the defendants are liable under 42 U.S.C. § 1983 for violating Plaintiffs' federal civil rights. 42 U.S.C. § 1983 provides individuals with the right to bring a civil action against any person within the United States jurisdiction who, acting under color state law, deprives the individual of his or federal civil rights. The statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . ., subjects, or causes to be subjected, any citizen of the United States. . .to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . .

42 U.S.C. § 1983. To succeed in an action brought under § 1983, the plaintiff must show both: "(i) that the conduct complained of has been committed under color of state law,

and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 23, 803 A.2d 1018; *Collins v. Nuzzo*, 244 F.3d 246, 250 (1st Cir. 2001).[5]

In general, a governmental entity or governmental official sued in an official capacity "is not a person subject to a section 1983 action for damages." *Campaign for Sensible Transp. v. Me. Tpk. Auth.*, 658 A.2d 213, 216 (Me. 1995). However, § 1983 permits plaintiffs to "sue a governmental officer in [his or her] individual capacity for alleged wrongs committed by the officer in [his or her] official capacity." *Powell v. Alexander*, 391 F.3d 1, 24 (1st Cir. 2004); *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990); *see also Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991). A plaintiff may maintain a § 1983 action against a governmental employee in their personal capacity only if the governmental employee is not entitled to qualified immunity. *Creamer v. Sceviour*, 652 A.2d 110, 112 (Me. 1995).

In addition, "[a] municipality or other local government" may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dept. of Soc. Servs. Of the City of New York*, 436 U.S. 658, 692 (1978)). Local governmental entities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal

---

[5] The MTCA's limitation and immunity provisions are not applicable to federal civil rights claims brought under § 1983. See Clifford, 2014 ME 60, ¶ 49, 91 A.3d 567; Mueller, 538 A.2d 294, 295-298 & n.4 (Me. 1988) (holding that the MTCA, "was not intended to apply to causes of action for breach of contract" or to "civil rights actions brought under 42 U.S.C. § 1983.")

policy' caused their injury." *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.*

Based on Plaintiffs' submissions on this motion, the Court understands that Plaintiffs are grounding both their federal and state civil rights actions on their claims that Defendants violated Plaintiffs' procedural due process rights, substantive due process rights, and rights to equal protection. Collectively, Defendants seek summary judgment on all of Plaintiffs' federal civil rights claims on the following grounds: (A) all of Plaintiffs' claims that accrued outside of the applicable filing period i.e., namely, the claims arising from the 2010 enforcement action are barred by the limitations period; (B) Plaintiffs' have failed to/are unable to present the elements of a prima facie case; and (C) all of the individual defendants are protected by the common law doctrine of qualified immunity. As noted earlier in this order, Plaintiffs' response to Defendants' statement of material facts is disorganized, improperly presented, and in many places difficult to understand. However, the Court will do its best to parse Plaintiffs' evidence and arguments regarding their substantive due process, procedural due process, and equal protection claims in the following sections and determine whether Defendants are entitled to summary judgment on their federal claims. The Court will address Plaintiffs' MCRA claims separately in another section of this order; however, the Court's analysis of the federal civil rights claims should be seen as essentially coextensive with its analysis of the state civil rights claims. *See Clifford*, 2014 ME 60, ¶ 50, 91 A.3d 567; *Doe v. Williams*, 2013 ME 24, ¶ 72, 61 A.3d 718.

### i. Procedural Due Process

The due process clauses of the Fourteenth Amendment of the United States Constitution and article 1, section 6-A of the Maine Constitution, protect "against the exercise of arbitrary governmental power and guarantee[ ] equal and impartial dispensation of law according to the settled course of judicial proceedings or in accordance with fundamental principles of distributive justice." *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 15, 82 A.3d 148. The protections provided by the state and federal due process clauses are normally separated into "substantive due process" and "procedural due process" rights. "The basic difference between a substantive and a procedural due process claim is that procedural due process requires that the procedures provided by the state in effecting the deprivation of liberty or property be adequate in light of the affected interest, while substantive due process imposes limits on what a state may do regardless of what procedural protection is provided." *Doe v. Bd. of Osteopathic Licensure*, 2020 ME 134, ¶ 20 n.8, 242 A.3d 182. To pursue either a substantive or procedural due process claim, the plaintiff must be able to demonstrate "state interference with a cognizable property or liberty interest." *Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 11, 802 A.2d 994.

The Law Court addressed the meaning of what constitutes procedural due process in the context of municipal land use boards in *Duffy*. The Law Court remarked in that opinion that "what constitutes due process in a municipal board hearing. . .depends primarily upon the nature of the proceedings and the possible burden upon that

proceeding." *Duffy*, 2013 ME 105, ¶ 16, 82 A.3d 148. The Law Court then provided the following as an explanation of what process may be due in different municipal board contexts:

> [W]hen governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used . . . The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.

*Duffy*, 2013 ME 105, ¶ 16, 82 A.3d 148. As further guidance, the Law Court has stated in the municipal context that "[i]t is essential to a party's right to procedural due process that he be given notice of and an opportunity to be heard at proceedings in which his property rights are at stake." *Mutton Hill Estates, Inc. v. Oakland*, 468 A.2d 989, 992 (Me. 1983). It has further stated in the municipal context, that "the essential elements of adjudication include the right to present evidence and rebut opposing evidence." *Lamarre v. Town of China*, 2021 ME 45, ¶ 13, 259 A.3d 764 (referencing *Town of Ogunquit v. Cliff House & Motels, Inc.*, 2000 ME 169, ¶ 11, 759 A.2d 731). Of particular importance to this case, the Law Court and the courts of other jurisdictions have held that a procedural due process claim does not arise from an administrative proceeding where the law provides access to judicial review of the administrative proceeding that would provide the means to correct the alleged due process violation. *See e.g., Cayer v. Town of Madawaska*, 2016 ME 143, ¶ 16, 148 A.3d 707 (articulating, in relation to a civil rights claim for violations of due process and First Amendment rights, that when direct review of a municipal proceeding

34

is available it is the "exclusive process for judicial review unless it is inadequate" and holding that 80B review was available to "correct any process errors" that occurred during a town's decision making process on a petition to secede); *Mongeau v. City of Marlborough*, 462 F. Supp. 2d 144, 150 (D. Mass. 2006) ("Even a bad faith refusal to follow state law in local administrative matters does not amount to a deprivation of due process where the state courts are available to correct the error.")

After reviewing the record, it is apparent to the Court that if the facts which are properly presented in Defendants' S.M.F. are not controverted and other facts are not raised, Defendants would be entitled to summary judgment on Plaintiffs' procedural due process claims on the grounds that Plaintiffs appear unable to sustain a prima facie case. The burden is therefore on Plaintiffs to properly set forth the necessary facts to support their claim. As previously mentioned, Plaintiffs' Opp. S.M.F. is generally not compliant with the required procedure set forth in M.R. Civ. P. 56 and is, in general, difficult to understand and filled with commingled legal arguments and additional matters that are not appropriately included in an Opp. S.M.F. However, from the Court's reading of Plaintiffs' submission, it appears that Plaintiffs are grounding their procedural due process claim on the following:

- The Town and Defendants' conduct during the August 12, 2013, Planning Board Meeting, which was held for the Planning Board to "revisit" the matter of whether Plaintiffs had violated a previously issued permit by removing more than 50% of the value of the existing structure from their property.

  o Plaintiff's claim that the Defendants violated Plaintiffs' due process rights at this meeting by maliciously:

    ▪ Ignoring or disregarding Plaintiffs' arguments and the information provided by the professional appraisal of the property at issue.

35

- Communicating (i.e., the Planning Board members) "ex parte" with a Department of Environmental Protection employee, Stephanie MacLagan about Plaintiffs' violation without communicating with Plaintiffs about these discussions

- Allowing Jeff Albert to participate as a Planning Board member at the meeting when he was not officially a member of the board and when he wished to participate for the purpose of depriving/denying Plaintiffs' their right to build and otherwise to harm Plaintiffs.

- Determining at the meeting that Plaintiffs had removed 50% of the value of the structure on their property; when the Planning Board only had the authority to receive Plaintiffs' evidence and arguments and to discuss the issue.

- The Town's ordinance deprived Plaintiffs of the right to appeal the Planning Board's determination that Plaintiffs had removed more than 50% of the structure from their land covered by their permit.

- The Town and Defendant's conduct during the September 3, 2013 Board of Selectpersons meeting, which was held for the BOS to determine whether Plaintiffs had violated the terms of their building permit.

  o Plaintiffs' claim that the Defendants violated Plaintiffs' due process rights at this meeting by maliciously:

    - Failing to provide Plaintiffs with the BOS's communication with Department of Environmental Protection employee MacLagan concerning Plaintiffs' building permit.

    - Failing to postpone the meeting upon Plaintiffs' written request (a letter purportedly received by the BOS on September 2, 2013), which was based on Plaintiffs' claims that they needed time to review the DEP's communications concerning their permit, claims that two members of the BOS were biased against them, and other matters.

    - Failing to discuss Plaintiffs' purported violation of the building permit before voting and determining that Plaintiffs had violated the permit.

    - The Town's ordinance did not provide them the right to appeal the BOS's decision at this meeting.

- The Town, maliciously, amended its complaint[6] against Plaintiffs regarding Plaintiffs purported land use violation in 2010 by adding an additional land use violation claim without following the Town's procedure for taking land use enforcement actions against individuals.

Regarding Plaintiffs' above assertions, the Court will first note that Plaintiffs have generally failed to present these matters in the form required by Rule 56. This failure to substantially comply with the applicable summary judgment procedure provides sufficient grounds to conclude that Plaintiffs have failed to properly present a prima facie case of a procedural due process claim that is remediable under the federal civil rights statute.

However, even when these procedural failures are overlooked and Plaintiffs' assertions and evidence are examined and viewed in the light most favorable to Plaintiffs, a reasonable trier of fact could not conclude based on Plaintiffs' showing that Defendants acted for the purpose of punishing them for participating in local politics or otherwise for the purpose of harming Plaintiffs. More importantly, none of Plaintiffs' asserted deprivations of process during the August 12, 2013 Planning Board meeting or the September 3, 2013 Board of Selectpersons meeting can support a civil rights claim founded on deprivation of procedural due process rights because the law afforded Plaintiffs the ability to challenge the defendants' purported actions during these proceedings and seek redress by bringing a timely petition for judicial review under M.R. Civ. P. 80B. *See Cayer*, 2016 ME 143, ¶ 16, 148 A.3d 707; *Mongeau v. City of Marlborough*,

---

[6] Although Defendants raise a statute of limitations defense as to the claims related to the 2010 enforcement action, the Court notes that the primary issues raised by Plaintiffs as to the 2010 enforcement action relates to the amended complaint filed after leave of Court granted on January 24, 2013 and actions at public meetings subsequent, all within the 6 year statute of limitations period. The Court may only consider events that occurred within the limitations period and relate to the pending complaint.

462 F. Supp. 2d 144, 150 (D. Mass. 2006) ("Even a bad faith refusal to follow state law in local administrative matters does not amount to a deprivation of due process where the state courts are available to correct the error.") Plaintiffs' choice not to avail themselves of the entirety of their procedural rights by pursuing a remedy for these alleged deprivations through the Rule 80B judicial review process does not allow them to afterward now claim that they were deprived of procedural due process rights in those administrative proceedings. Because the 80B review process was available to correct Plaintiffs' alleged deprivations of procedural due process during the administrative proceedings at issue, it cannot be said that Plaintiffs were denied procedural due process on these matters. This analysis remains the same even if it is assumed that Plaintiffs are correct that the Town enacted an ordinance barring judicial review under Rule 80B and even if Plaintiffs are correct that members of the Town's Planning Board and BOS were biased and acting maliciously against them during the administrative proceedings.

Similarly, Plaintiffs' assertion regarding the Town's amendment of a complaint against Plaintiffs, adding an additional and purportedly false land use enforcement claim, is not supportive of their action for deprivation of procedural rights. If the Town's amendment of its complaint somehow violated Plaintiffs procedural due process rights, Plaintiffs were able to seek adequate remedies through the courts by opposing the Town's amendment of the complaint through the normal judicial process. The procedure set forth in the Maine Rules of Civil Procedure and Maine Rules of Appellate Procedure for challenging such an activity was sufficient to safeguard Plaintiffs' procedural due process rights relating to that matter.

For all of these reasons, the Court concludes that Plaintiffs have failed to show that they are able to produce the necessary evidence to sustain a civil rights action for deprivation of procedural due process rights under 42 U.S.C. § 1983. The Court grants Defendants' summary judgment on Count V to the extent it seeks relief for alleged deprivations of constitutional, procedural due process rights.

ii.    Substantive Due Process

The substantive due process guarantee of the Fourteenth Amendment protects against governmental actions that are arbitrary and oppressive. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). To succeed on a substantive due process claim premised on the actions of governmental employees or officials, as the Cayers' action is here, the plaintiff must show that the government has engaged in conduct that "shocks the conscience and violates the decencies of civilized conduct." *LeGrand v. York Cnty. Judge of Prob.*, 2017 ME 167, ¶ 38, 168 A.3d 783 (quoting *Lewis*, 523 U.S. 833 at 846). This standard is extremely difficult to satisfy. As the First Circuit Court of Appeals has explained, "[t]he burden to show governmental conduct that 'shocks the conscience' is extremely high, requiring 'stunning' evidence of 'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from 'bad faith' to 'something more egregious and more extreme.'" *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010); *see also Lewis*, 523 U.S. at 846 ("Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense."); *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005) ("Mere violations of state law, even violations resulting from bad faith, do not necessarily

amount to unconstitutional deprivations of substantive due process."); *Collins v. Harker Heights*, 503 U.S. 115, 128-129 (1992) (stating that the substantive component of the Fourteenth Amendment's Due Process Clause is violated by the actions of governmental officers only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.");

Turning again to the merits, the Court finds the facts presented in Defendants' S.M.F. sufficient to shift the burden on this motion to Plaintiffs to produce evidence sufficient to sustain a prima facie case for their substantive due process claims. The substantive due process component of Plaintiffs' § 1983 claim appears to generally be based on the following assertions:

- The Town and the named defendants who were or are employees or officials of the Town, conspired and acted together to violate Plaintiffs' constitutional rights by developing a false basis for and then issuing notices of violation on June 3, 2010 and June 4, 2013 against Plaintiffs for violating the Town's land use ordinance.

- The Town and the named defendants then continued to conspire and act together during administrative enforcement proceedings to harm Plaintiffs and deprive them of their rights by perverting the administrative proceedings, determining Plaintiffs were in violation of the Town's ordinance, and then deciding to bring civil enforcement actions against Plaintiffs based on the purportedly false notices of violation.

- The Town and named defendants then abused Plaintiffs rights further by filing and maintaining meritless 80K enforcement actions in the courts and purportedly making many false statements during these proceedings to support the purportedly meritless actions and doing all of this for the purpose of harming Plaintiffs.

- The Town and named defendants undertook all of the above actions for the malicious purpose of punishing Plaintiffs for their participation in local politics and harming them generally.

40

As the Court has previously discussed, Plaintiffs' Opp. S.M.F. does not properly present facts from which a reasonable trier of fact could conclude that Defendants undertook the actions Plaintiffs allege for the purpose of harming Plaintiffs or that Defendants conspired together in bad faith to achieve that end. Plaintiffs' showing on those matters amounts to little more than a collection of Plaintiffs' own speculative conclusions as to Defendants' intentions. Even if Plaintiffs were able to successfully show that the Town and its employees were wrong from the beginning in believing that Plaintiffs violated the ordinance, that the Town's enforcement actions were in fact meritless, and that the Town incorrectly applied its own laws and procedure during the administrative proceedings, Plaintiffs would not be able to sustain a prima facie case on their substantive due process claims. Having failed to present adequate evidence to support their conclusions that Defendants acted against them for malicious purposes, Plaintiffs are unable to meet their burden of producing "stunning evidence" of arbitrary and oppressive governmental action that "shocks the conscience" in a "constitutional sense."

As Plaintiffs have failed to properly present facts that would sustain a prima facie case for a federal civil rights claim seeking relief for a violation of substantive due process rights, the Court grants Defendants' motion for summary judgment on Count V to the extent it seeks relief for violations of substantive due process rights.

### iii. Equal Protection

To prevail on a § 1983 claim for the violation of equal protection rights, the plaintiff must be able to prove that "compared with others similarly situated, the [plaintiff] was selectively treated based on impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Marshall v. Town of Dexter*, 2015 ME 135, ¶¶ 30-31, 125 A.3d 1141 (discussing the elements that must be alleged in a complaint seeking relief on an equal protection claim); *Tapalian v. Tusino*, 377 F.3d 1, 5 (1st Cir. 2004). In this case, Plaintiffs do not claim that they are a member of a particular class of persons with a particular attribute but instead, claim that they were selectively treated differently as individuals. When "a person alleges selective treatment as an individual and not a member of a specific class, that class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action." *Marshall*, 2015 ME 135, ¶ 30, 125 A.3d 1141; *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013). "Conclusive generalities asserting that the plaintiff was treated differently will not suffice" to support the claim. *Marshall*, 2015 ME 135, ¶ 31, 125 A.3d 1141; *Polk*, 2000 ME 152, ¶¶ 15-16, 756 A.2d 510 ("vague allegations" about a municipal code enforcement officer's "impermissible reason" for opposing a plaintiff's permit application were insufficient to support an equal protection claim); *see also Gianfrancesco*, 712 F.3d at 640. Instead, to prevail on an equal protection claim, the plaintiff must be able to produce sufficient evidence from which a jury could reasonably determine that the challenged act or omission had a discriminatory effect and that the challenged act or omission had a discriminatory purpose. *Marshall*, 2015 ME 135, ¶ 30, 125 A.3d 1141; *Polk v. Town of Lubec*, 2000 ME 152, ¶ 14, 756 A.2d 510 ("In order to establish a constitutional equal protection violation based on selective prosecution or selective enforcement, a plaintiff must at a minimum establish 'that the challenged decision . . . had a 'discriminatory effect and that

it was motivated by a discriminatory purpose.'"); *see also Wayte v. United States*, 470 U.S. 598, 608 (1985).

Plaintiffs have failed to present sufficient evidence to support an equal protection claim here. Plaintiffs' equal protection claim appears to be based on their assertions that during various Town administrative proceedings on their land use violations, such as the September 3, 2013 Board of Selectpersons meeting, Defendants treated Plaintiffs' more harshly than other residents of the Town who were at the meeting for land use violations. Plaintiffs also assert that the Town's decisions to commence the 2010 and 2014 enforcement actions were discriminatory, as such actions were not brought against other similar land use violators. Plaintiffs' assertions on these points are largely based on their own characterizations and conclusions regarding what occurred at the administrative proceedings and their conclusion that the Town was acting maliciously to harm them as punishment for their participation in local politics. Plaintiffs' showing is not sufficient to allow a reasonable jury to conclude that Defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. In particular, Plaintiffs' showing falls far below what is necessary to proceed as "class-of-one" plaintiffs, as they have failed to show that their comparators are similarly situated in all respects relevant to the challenged actions by the Town and its employees and officials. *See Marshall*, 2015 ME 135, ¶ 30, 125 A.3d 1141.

Having now concluded that Plaintiffs have failed to produce sufficient evidence to sustain an equal protection claim under 42 U.S.C. § 1983, the Court grants Defendants' motion for summary judgment on Count V in its entirety.

### F. Count VI (State Civil Rights Claim, 5 M.R.S. § 4682)

The Maine Civil Rights Act (MCRA) is "patterned after 42 U.S.C. § 1983." *Jenness*, 637 A.2d at 1158. Section 4682 of the MCRA authorizes a private civil action against "any person" who "intentionally interferes or attempts to intentionally interfere by physical force or violence, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property with the exercise or enjoyment by any other person of rights secured by [state or federal constitutional or statutory law]." 5 M.R.S. § 4682(1-A); *Saunders v. Tisher*, 2006 ME 94, ¶ 24, 902 A.2d 830. An MCRA civil rights claim is not a "tort claim" and therefore the MTCA's immunity and filing limitation provisions are inapplicable to such claims. *See Clifford*, 2014 ME 60, ¶ 51, 91 A.3d 567.

After reading Plaintiffs' submission, it is apparent to the Court that Plaintiffs' MCRA claim is based upon the same alleged deprivations of constitutional rights and relies upon the same assertions upon which they based their § 1983 claim.[7] For this reason and the close relationship between the federal and state causes of action, the Court's analysis of Plaintiffs' section 1983 claims is equally applicable to their MCRA claims. Plaintiffs' Opp. S.M.F. does not properly present the necessary facts to sustain an MCRA claim based on deprivations of procedural due process, substantive due process, or equal protection rights, for the same reasons why the Court has determined that Plaintiffs' Opp. S.M.F. is not adequate to sustain their § 1983 claims. Plaintiffs' MCRA claims also fail

---

[7] To support their MCRA claim, Plaintiffs rely in particular on their assertion that Defendants commenced and maintained frivolous land use enforcement actions against them in the Maine courts, resulting in damages and the deprivation of their civil rights.

because Plaintiffs' have not properly presented the necessary facts to establish, prima facie, that Defendants "intentionally interfered" or attempted to "intentionally interfere" by "physical force or violence, damage or destruction of property, or trespass on property" or by the threat of such actions, with Plaintiffs' civil rights. Plaintiffs' assertions in regard to Defendants' intent to interfere with Plaintiffs' civil rights in the manner described in § 4682 appear to be based on their own speculative conclusions rather than on facts supported by competent evidence. For all of these reasons, the Court concludes that Plaintiffs have failed to properly present the requisite facts necessary to sustain their burden of proof and avoid summary judgment on Count VI. The Court therefore grants summary judgment to all of the defendants on Count VI of the Complaint.

### G. Count VII (Intentional Infliction of Emotional Distress)

To hold a defendant liable for intentional infliction of emotional distress, a plaintiff must prove four essential elements:

> (1) either that the defendant intentionally or recklessly inflicted severe emotional distress or that his or her conduct was substantially certain to inflict severe emotional distress,
> (2) that the defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community,
> (3) that the defendant's conduct caused the plaintiff's emotional distress, and
> (4) that the emotional distress was so severe that no reasonable person could be expected to endure it.

*Bratton v. McDonough*, 2014 ME 64, ¶ 22, 91 A.3d 1050. "Where reasonable people may differ, it is for the jury . . . to determine whether, in a particular case, the conduct has been

sufficiently extreme and outrageous to result in liability." *Id.* (quoting *Colford v. Chubb Life Ins. of Am.*, 687 A.2d 609, 616 (Me. 1996)). Showing merely "serious emotional distress" or "general feelings of upset and defeat" is "insufficient to establish a claim for intentional infliction of emotional distress." *Argereow v. Weisberg*, 2018 ME 140, ¶ 19, 195 A.3d 1210; *Lyman v. Huber*, 2010 ME 139, ¶¶ 19, 24-26, 10 A.3d 707 (holding that a plaintiff's "serious emotional distress" resulting from 15 years of emotional abuse by her domestic partner was not "so severe that no reasonable person could be expected to endure it.")

Plaintiffs' IIED claim against the defendants is subject to the provisions of the MTCA. Defendants have established through their motion that the Town is a governmental entity and has immunity from this tort claim under § 8103 unless an exception to immunity applies to the claim. Upon review of the record, it is apparent that none of the exceptions set forth in § 8104-A or the other sections of the MTCA apply to Plaintiffs' IIED claim against the Town. Accordingly, the Court grants summary judgment in favor of the Town on Count VII.

The individual defendants make two main arguments that the Court should grant summary judgment in their favor on Count VII, the affirmative defenses of discretionary immunity under § 8111 and limitations periods provided in § 8107 and § 8110. However, the matters set forth in Defendants' motion also indicate, as an initial matter, that Plaintiffs are unable to produce the facts necessary to sustain a prima facie case of IIED against the defendants. Again, to prove a prima facie case of intentional infliction of emotional distress, the plaintiff must be able to produce evidence from which a jury could reasonably conclude that the defendant's "extreme" and "outrageous" conduct caused

46

the plaintiffs to suffer emotional distress that "was so severe that no reasonable person could be expected to endure it." *Bratton*, 2014 ME 64, ¶ 22, 91 A.3d 1050. As discussed in previous sections of this Order, Plaintiffs' claims that the Town, the Town's code enforcement officer, town manager, attorney, Planning Board members, and BOS members acted to commence and maintain enforcement actions against Plaintiffs in bad faith for the purpose of harming Plaintiffs and punishing them for participation in local politics are not properly supported by competent evidence in the record but instead, appear to be based merely on Plaintiffs' own speculative conclusions and characterizations of the evidence. Even if Plaintiffs are correct that they did not actually engage in any conduct that violated the Town's ordinance and that the Town was wrong to bring enforcement actions against them, without a finding that Defendants acted in bad faith in pursuing the enforcement actions, Plaintiffs' are unable to generate a genuine dispute as to whether Defendants engaged in the requisite "extreme" and "outrageous" conduct and are unable to generate a genuine dispute as to whether this purported conduct caused Plaintiffs to suffer "severe" emotional distress within the meaning of Maine's tort law. Without a finding that Defendants acted maliciously when pursuing the enforcement actions against Plaintiffs, a jury could not reasonably conclude that by undertaking the enforcement actions against Plaintiffs the defendants engaged in conduct "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community." Even if ultimately incorrect as to whether a violation occurred, it cannot be legitimately argued that a municipal employee or official engaged in actions that were "extreme",

47

"outrageous", and exceeded "all possible bounds of decency" by merely pursuing a land use enforcement action against a resident of the municipality, when those actions are not shown to be for a malicious purpose. Moreover, Plaintiffs have not properly presented sufficient facts in response to the motion to support a finding that Defendants' conduct caused Plaintiffs to suffer the high degree of emotional distress required to sustain an IIED action in Maine. For all of these reasons, the Court concludes that Plaintiffs have failed to meet their burden on this motion to properly present facts that would support a prima facie case of IIED.

In sum, the Court concludes that Defendants' motion is sufficient to shift the burden to Plaintiffs to produce and properly present the necessary facts to sustain a prima facie case of IIED and that Plaintiffs have failed to meet this burden, as their showing would not allow a jury to reasonably find that Defendants' engaged in "extreme" and "outrageous" conduct nor allow a jury to find that this conduct caused Plaintiffs to suffer "severe emotional distress" as required by Maine law. It is therefore unnecessary for the Court to decide on whether the defendants' affirmative defenses apply to this claim. Accordingly, the Court grants summary judgment in favor of Defendants on Count VII of the Complaint.

## H. Count VIII (Negligent Infliction of Emotional Distress)

To succeed on a claim for negligent infliction of emotional distress (NIED), the plaintiff must "set forth facts from which it could be concluded that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." *Coward v. Gagne & Son Concrete*

48

*Blocks, Inc.*, 2020 ME 112, ¶ 14, 238 A.3d 254. "Plaintiffs claiming negligent infliction, . . ., face a significant hurdle in establishing the requisite duty" because "duty," in these circumstances, "is not generated by traditional concepts of foreseeability." *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. In Maine, a defendant is only considered to have a duty to avoid negligently causing emotional harm in three situations: (1) in "bystander liability actions," if certain requirements are met; (2) where a "special relationship exists between the actor and the person emotionally harmed"; and (3) "when the wrongdoer has committed another tort" and the NIED claim is not "subsumed" in the award for emotional or mental damages entered on the separate tort. *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d 18. Additionally, the Law Court has held that to recover on a NIED claim, the plaintiff must prove "severe emotional distress." *Id.* ¶ 20.

As the Court has concluded in this Order that Defendants are entitled to summary judgment on all of Plaintiffs other tort claims, Plaintiffs may only proceed on Count VIII if they are able to produce sufficient evidence to support the claim based on a "bystander liability" theory or a "special relationship" theory. *Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18. However, Plaintiffs have not made any claim for liability based on a bystander status theory nor have Plaintiffs advanced any claim for liability based on a "special relationship" theory. Nor would such claims have prima facie support from facts in the summary judgment record if such claims were made. Moreover, the Court's previous conclusion that Plaintiffs have not properly presented prima facie proof that they have suffered "severe emotional distress" as to their IIED claim is equally applicable to their NIED claim. *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d 18 (to recover on an NIED claim, the

49

plaintiff must prove "severe emotional distress"). Accordingly, because Plaintiffs' have failed to produce prima facie proof of all of the elements of the cause of action, they are unable to proceed on their NIED claim against the defendants.

The Court concludes that Plaintiffs have failed to produce and properly present the facts necessary to support a prima facie case for negligent infliction of emotional distress in Maine. It is therefore unnecessary for the Court to decide on whether the defendants' affirmative defenses apply to this claim. As Plaintiffs' have failed to meet their burden as to this claim, Defendants' motion for summary judgment is granted as to Count VIII.

## IV. CONCLUSION

After fully reviewing the summary judgment record and the parties' arguments, the Court has concluded that Defendants are entitled to summary judgment on all counts of Plaintiffs' complaint. Accordingly, the Court grants Defendants' motion and enters summary judgment against Plaintiffs on all Counts of the Complaint.

Entry:

Defendants' Motion for Summary Judgment is GRANTED.

The Clerk shall incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

_1/11/2022_
Date

_[signature]_
Justice, Maine Superior Court

STATE OF MAINE

AROOSTOOK, ss

SUPERIOR COURT
CIVIL DOCKET
DOCKET NO. CARSC-CV-18-135


RICHARD CAYER and )
ANN CAYER )
PLAINTIFFS )
vs. )
)
)
)
)
TOWN OF MADAWASKA, et al )
DEFENDANT )

ORDER REGARDING
MEDIATION FEE
RULE 16B


Before the court is the litigants' dispute regarding division of the mediation fee. Phone conference with counsel was held May 3, 2019. Plaintiffs commenced this action against the Town of Madawaska plus five individuals who each were employees or agents of the Town during the time the causes of action accrued. The Plaintiffs assert there are six separate defendants and therefore the defendants collectively should pay 6/7th of the mediation fee and they pay 1/7th. The Defendants maintain that although there may be six different defendants named, they are collectively one body, who all are under the umbrella of the Town. Defendants further maintain that each individual defendant was an employee or agent of the Town, and in the end, if any liability is established it will be assumed by the Town. From the discussion held during the phone conference it was unclear whether liability could be established against any one individual that would not be assumed by the Town or for which the Town would also be liable. All of the defendants are represented by the same counsel.


Based on its limited perspective of the case, the court is left with the view that there is one plaintiff party, Mr. and Mrs. Cayer, suing one defendant party, the Town of Madawaska and it's

five employees or agents, on various theories of liability. Although the plaintiffs may perceive that individual employees or agents of the Town may have wronged them, as alleged in their various counts, it remains that it is the Town that is at the heart of the plaintiffs' claims of wrongdoing. On the present record, the court is not persuaded that the defendants should be counted as more than one party for the purpose of allocation the Rule 16B mediation fee. Accordingly, the court orders that the Rule 16B mediation fee be divided equally, with Plaintiffs Mr. and Mrs. Cayer to pay 50% and the Defendants Town of Madawaska and the five named individuals to pay 50%, provided however the court reserves the right to reallocate this division in the event the matter goes to final judgment and the court is required to make an order on a request for bill of costs.

Pursuant to Rule 79(a) this order shall be incorporated by reference in the Civil Docket.

Dated: May 7, 2019

Harold L. Stewart, II
Justice, Superior Court